# The State *vs.* J. Wesley Hoofman.

An indictment for fishing with gill nets in the Potomac river contrary to the act of 1845, ch. 148, must aver that that act was assented to by the legislature of Virginia, as required by the 8th article of compact of 1785 between the two States; for without such assent that act is of no effect.

Error to the Circuit Court for Charles county.

The defendant in error was indicted for fishing with gill nets in the Potomac river, contrary to the act of 1845, ch. 148, but the indictment contained no averment that this act had been assented to by the legislature of Virginia, as required by the 8th article of the compact between the two States, made in 1785, and recited in the act of 1785, ch. 1. To this indictment the defendant demurred generally, which demurrer the court (CRAIN, J.) sustained, and gave judgment thereon for the defendant. To correct this judgment the State sued out the present writ of error from the equity side of said court.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Robert S. Reeder,* State's Attorney for Charles county, argued for the State:

1st. By the charter of Maryland the Potomac river to its mouth belonged originally to Maryland, and by the charter of Virginia the Chesapeake bay from its mouth to the mouth of the Potomac belonged originally to Virginia. The compact of 1785 gave a right in *common* to both States to both the river and the bay, (2 *Bland,* 123, *Binney's case; Vattel's Law of Notions; Book* 1*st, ch.* 22,) and hence, from these authorities, the river and bay being owned in common by the two States out to the ocean, the fish within the river and bay for the time being, although beneath the surface of the waters, could not be considered creatures *feræ naturæ,* because they are in a common pond. *Whart. Cr. Law,* 391. 2 *Bl. Com.,* 7. 1 *Stephen's Com.,* 149, 157, 158.

2nd. By the compact of 1785 commerce and fishing were made common to both States. The question of commerce is transferred to the jurisdiction of the United States by the adoption of the constitution of the United States. 9 *Wheat.,* 1, *Gibbons vs. Ogden. Holcombe's Digest,* 205. The right of fishing remains in common as at first, unaffected by the adoption of the constitution of the United States.

3rd. The compact in this case is a law. 2 *Pet.,* 255, *Foster, et al., vs. Neilson.* 6 *Do.,* 691, *United States vs. Arredondo, et al.* 12 *Do.,* 511, *Garcia vs. Lee.* By the terms of the 7th section of this law, the right of fishing on the river shall " be common to and equally enjoyed by the citizens of both States, provided that such common right be not exercised by the citizens of one State to the hindrance or disturbance of the fisheries on the shores of the other State; and that the citizens of neither State shall have a right to fish with nets or seines on the shores of the other." The act of 1845 refers exclusively to nets which are not laid from or landed upon the shore of the Potomac and its tributaries, and therefore is not in conflict with this part of the compact. The question then arises, is it in conflict with that portion of the 8th section of the compact which says, " all laws and regulations which may be necessary for the preservation of fish shall be made with the mutual con-

sent and approbation of both States?" For the power of the State government to pass laws to protect the fisheries as a police regulation, see the numerous cases in *Metcalf & Perk. Digest*, 425 to 428. In navigable rivers the fishery is common to all the subjects under the regulations of government. 5 *Pick.*, 199, *Commonwealth vs. Chapin.* 5 *Mass.*, 266, *Burnham vs. Webster*.

4th. Under the compact I should suppose either State could enact a police regulation by which the fish should be protected, provided it does not interfere with the rights of the other; and if a law is passed either with the provisions annexed and tacitly acquiesced in by the other it is consent, and certainly, I should think, a stranger has no right to obtrude himself into the construction or execution of this compact, for it does not appear from the face of the indictment that the defendant is either a citizen of Maryland or Virginia, and neither Virginia nor one of Virginia's citizens has complained. *Metcalf & Perk. Digest*, 534. In *Brien vs. Elliott*, 2 *Penn. Rep.*, 49, I find this language: "The basis of this compact is an admission that the jurisdiction of the territory shall be taken to have been in common," and in the same opinion it is said: "Both States have a power to regulate questions of title to the soil." The right of fishery in this case is common, and neither Virginia nor one of her citizens objects, and that Maryland could control her own citizens, see the authorities cited upon the third point.

No counsel appeared for the defendant in error.

Tuck, J., delivered the opinion of this court.

The defendant in error was indicted for fishing with gill nets in the Potomac river, contrary to the act of 1845, ch. 148. Upon general demurrer to the indictment judgment was rendered against the State.

The question for decision is, whether it was necessary to aver and show upon the trial that the legislature of Virginia had assented to our act of Assembly.

The *eighth* article of the compact between the States, recited in the act of 1785, ch. 1, declares, that "all laws and regula-

tions which may be necessary for the preservation of fish in the river Potomac shall be made with the mutual consent and approbation of both States.'' It follows that our act of 1845 could have no operation until assented to as required by the compact. And, as the court must take notice of the compact, as well as the act of 1845, the indictment was defective, in not informing the court that the assent of Virginia, of which they had no judicial knowledge, had been obtained.

*Judgment affirmed.*