ANDERSON, J.,
delivered the opinion of the court.
By an act of assembly, in force April 1st, 1873, the owner or occupier of land having a water front, suitable for planting or sowing oysters thereon, might have *so much of the “beds or shores assigned to him by the inspector of the district, for his exclusive use and occupancy for the period of one year, as the inspector might deem,necessary for the quantity proposed to be planted or sowed.” (Sess. Acts 1872-’3, ch. 333, $$ 6, 7 and 8.) In pursuance of this act, Sallie and Eliza W. Taze-well, who were the owners of land having a water front suitable for such purpose, had a part thereof assigned to them by the said inspector; which, before the 1st of May 1874, they caused to be “marked by suitable stakes,” in compliance with the requirement of the statute.
On the 3rd of June following, they had a summons issued from the clerk’s office of the Circuit court for Northampton countjr, against Joseph P. Power and Benjamin Kellog, plaintiffs in error here, alleging that they were in possession of and unlawfully detained from them the land and oyster grounds therein described, which are the same that were assigned to them as aforesaid; in which action they obtained judgment, and an award of the writ of habere facias possessionem; to which judgment the defendants obtained a writ of error and supersedeas from one of the judges of this court.
It is contended for the plaintiffs here, that the defendants in error have acquired no rights under the act of April 1st, 1873; and that if they have, and the plaintiffs in error have interfered therewith, they have mistaken -their remedy. That it is not a case for an action of unlawful entry and detainer. That the statute does not authorize a grant of the soil, or an estate or in *561 terest in the soil; but only a license, which is an authority to do a particular act, or series of acts, upon the land of which the commonwealth is proprietor, without passing' an estate therein; and which license is revocable.
'^Whether the statute can be construed as authorizing a lease or a mere license, it gives to the lessee or licensee an exclusive right to the use and occupancy of beds or shores of creeks, &c., for the period of one year, for the purpose of planting or sowing oysters, which might theretofore have been used or exercised in common by the citizens of the commonwealth. And the court is of opinion that after he has acquired such exclusive right under the statute, he may resort to the summary action of unlawful entry and detainer, as an appropriate remedy to assert and enforce his exclusive right against any one who enters thereon and withholds from him the exclusive use and occupation thereof for the purpose aforesaid. And the court is further of opinion that the proof in this cause shows that the plaintiffs in error, when the summons was issued had such occupation and possession of the premises as was incompatible with the enjoyment bj' the defendants of their exclusive right, if ■such right existed, to the use and occupation thereof for the purposes aforesaid, and that they withheld from them such possession.
The whole case then turns upon the question, had they an exclusive right to the use and occupancy of the premises when the summons was issued in this cause? In Olinger v. Shepherd, Judge Moncure, in delivering the opinion, in which a majority of a full court concurred, said: “There is a material difference between an action of ejectment and an action of forcible or unlawful entry. The title or right of possession is always involved in an action of ejectment. * * And the defendant without having any right to the possession himself, may generally prevent a recovery by the plaintiff by showing an outstanding right of possession in another.” In the action of unlawful entry *and de-tainer he says, ‘ !if the defendant enters unlawfully, the plaintiff is entitled to recover without any regard to his right of possession.” 12 Graft. 462, 470. But it is necessary to show that the defendants’ entry was unlawful, and that he unlawfully withholds the possession. And in this case, the defendants’ entry and withholding the possession of the premises was not unlawful, unless the plaintiffs below had acquired the exclusive right to their use and occupancy, or had not lost their right to the priority. It would seem to be necessary therefore in this case, to entitle the plaintiffs below to a recovery, that they should show an exclusive right to the use and occupancy of the premises, or, at least, a right ■of priority over the defendants. Had they acquired that exclusive right?
It is contended that they had not, and that position is supported by the counsel for the plaintiffs in error in an argument of much abilitjr and ingenuity. They insist that the act of 1873 only authorizes a license, which is revocable; and that the act of April 18, 1874, having repealed the act of April 1, 1873, it is a revocation of the license.
First, is it a mere license which is revocable? Licenses to do a certain act, but passing no estate in the land, may be pleaded without a deed. And this doctrine does not, we are told, trench upon the policy of the law which requires that contracts for the sale of real estate, or a lease thereof for more than one year, shall be in writing. And the reason is, because licenses amount to nothing more'than an excuse for the act which would otherwise be a trespass, and render the party liable to damages. Cook v. Stearnes, 11 Mass. R. 538. Such is not the nature of this act. It is not merely a permission to do an act or series of acts upon another’s land, which would excuse him *from trespass. It is not a permission to do certain acts — that privilege was enjoyed independently of the statute — and the doing of those acts would have been no trespass. But the design and object of this statute was to give an exclusive right to the licensee or ,lessee, to use and occupy the land, for the period of one year, for his benefit, for a consideration payable to the state, the proprietor. It confers in fact an exclusive right to use, occupy or take the profits of land, by planting or sowing oysters upon it, which grow and fatten upon the soil and the salt water, and increase in value, I am informed, from seventy-five to one hundred per cent. Such a permission may be sometimes called a license. It is more in the nature of a lease. 1 Wash, on Real Property, 3d ed., p. 543, and cases cited. Licenses which in their nature amount to the granting of an estate for ever so short a time, are not good without deed (a lease for one year without writing is good by our statute), and are considered as leases, and must always be pleaded as such. And this is in fact the principle decided in the case of Cook v. Stearnes, 11 Mass. R., supra, cited by the counsel for the plaintiffs in error. In that case the defendant pleaded a license, and the court held that the plea was bad, because the interest claimed was not in the nature of a license, but of an estate, or at least an easement, in the land, which cannot be acquired without writing or prescription, or such a possession or use as furnishes presumption of a grant; neither of which is averred in (the) plea.” There is nothing in that case which militates against the above view; but it in fact supports it. If a man license me to enter into his land, and to occupy it for a year, half a year or such like, this is a lease, and so shall be pleaded. Viner’s Abridg., title License, p. 92.
*'Again, it cannot be maintained that the right acquired by the lessee or licensee is not transferable or transmissible at his death. Suppose there had been no repeal of the statute, or revocation, and *562 that the defendants in erro'r, after they had planted or sown oysters upon their reservation, had made sale of their land fronting-on the shore, and were about to remove from that country; can there be any question of their right to transfer their oyster grounds to the purchaser of their farm? Or if they died, that their oyster plantation, in the same plight in which they held it, would be transmitted to their personal representatives? Yet a mere license is so much of a personal trust and confidence, that it does not extend to any one but the licensee, and the death of either the licensor or, the licensee, or the, transfer by either party, will revoke it (1 Wash. on Real Property, p. 545). That is not the nature of the assignment in question, and it cannot be regarded therefore as a mere license.
If it is a license it is coupled with an interest; it gives an exclusive right to use and occupy and take the profits of the soil upon which the oysters are planted or sown. It was anciently held, that “there is a great diversity between a license in fact, which giveth an interest, and a license in fact which giveth only an authority or dispensation; for the one is not to be countermanded, but the other is.” Arg. Inane’s Rep. p. 46, citing 5 H. 7, and Mar. Dyer 92.
If it is a license, it is a license which not only gives an interest — a right to its exclusive use and occupancy — but gives it for a certain period, for one year, and for a valuable consideration which is paid. If a certain time is limited, it is not revocable though the thing is not done. Jenk. Rep. 209, pi. 41.
But whether it be a lease or a license, has there *been a revocation by the state in this case? If the state has not revoked it, though it be revocable, the defendants below could not derive advantage in their defense upon the ground that it was revocable. There is no express revocation by the state. But it is argued that the repeal of the act of 1873, by the act of 1874, was a revocation of the license. It is enacted (chap. 15, % 13, p. 196, Code of 1873), “that no law shall be construed to repeal a former law;” first, “as to any right accrued; or,” second, as to any “claim arising under the former law;” “or in any way whatever to affect” “any right accrued, or claim arising,” “before the new law takes effect. ’ ’ In this case it is at least a claim arising under the act of 1873, before the repealing act took effect, if indeed the right had not accrued. They had in all respects complied with the terms and requirements of the statute. They were entitled to a priority over all others on certain conditions, which they had fulfilled. They had made application in time to the inspector. They had paid the rent which was the consideration of the assignments. And the assignments had been executed to them by the officer of the state, who was clothed with authority for that purpose.
But it is said that the payment of the rent was voluntary, that it was paid in advance of the obligation to pay, and therefore could give no good foundation for their claim. The statute does not say at what time the rent should be paid, whether in advance or during the year, or at its close. But it is argued that as rent is usually not due until the end of the year, it is presumable that the legislature did not intend that it should be paid until then; and that when the legislature intended otherwise, as in section 11, it expressly required the rent “to be paid in advance.” It may *rather be inferred therefrom, that in the mind of the .legislature the payment in advance was not incompatible with the idea of rent. The requirement, to pay in advance not being expressed in the previous sections does not impty that the legislature intended that it should not be paid in advance. But those sections being silent as to the time of payment, it is implied that it was left to the discretion of the inspector to prescribe the time of payment. And in the proper exercise of his discretion having required the rents to be paid in advance, it was as obligatory upon the assignees as if it had been expressed in the statute.
The new act, which repeals the act of 1873, was approved on the 18th of April 1874. By the acts of assignment, which were executed when the act of 1873 was in force, they were invested with the exclusive right to the use and occupancy of the premises, provided they caused them to be marked by suitable stakes before the 1st of Majr 1874, which requirement and condition was strictly within the inspectors authority. They complied with that proviso to the letter, and caused the reservations to be marked with suitable stakes before the 1st of May 1874 ; that is, about the 26th of April. And the court is of opinion that although it was not done until after the repealing act was passed, it was a fulfilment of the condition which entitled them to the right, and that upon the performance thereof their right to the exclusive use and occupancy of the premises vested, and cannot be affected in any way by the repeal of the former act.
The court is therefore of opinion to affirm the judgment with costs and damages to the defendants in error.
Judgment affirmed.
OYSTERS.
I. Ownership of Oyster Lands.
A. State as Owner.
B. Riparian Proprietors.
C. Ownership by Statutory Assignment.
D. Mere Possession.
II. Violation of Oyster Laws.
A. Defective Indictments.
B. Forfeitures.
III. Oyster Tax.
IV. The Compact of 1785.
I. OWNERSHIP OF OYSTER LANDS.
A. State as Owner. — The principle had long been settled, that each state owns the bed of all tide *563 waters within its jurisdiction, unless they have "been granted away. But the title thus held is subject to the paramount right of navigation. The state in the exercise of its ownership of land covered with water, may grant the exclusive use of it to its own citizens. Such a grant is not a violation of the power of congress to regulate commerce. Commerce has nothing to do with land while producing, hut only with the product after it has become the subject of trade. The right acquired under such grant is a property right and not a mere privilege. McCready v. Com., 94 U. S. 391. (1877.)
B. Riparian Proprietors.--Riparian owners of lands bounded by the Ohio river own the fee to low-water mark, subject to an easement of the public in that portion lying below high-water mark, with the right of the state to control that easement for the purposes of navigation and commerce without compensation to the owner. Ravenswood v. Flemings, 22 W. Va. 52.
A lessee of a fishery in a navigable river, whether his title extends to the middle of the stream or not, has certain riparian rights which can be taken for the public good only upon due compensation made. Alex. & Fred. Ry. Co. v. Faunce, 31 Gratt. 761.
C. Ownership by Statutory Assignment. — Under ch. 251, § 6, acts 1888-84, an assignment for planting oysters may be made to the owner or occupier but not to both if the full quantity has been once assigned. The inspector maje however, assign occupied hot-tom but in such case the planter has eighteen months in which to remove his oysters already planted. Hurst v. Dulany, 84 Va. 701, 5 S. E. Rep. 802.
No irrevocable right of property can be acquired under the act of March 4th, 1884, § 0, for the right to revoke privileges granted under that act is expressly reserved therein. Nor can one who has availed himself of privileges under that act question the constitutionality thereof. Purcell v. Conrad, 84 Va. 557, 5 S. E. Rep. 545.
The main object of the oyster law is to obtain revenue. A conditional application for assignment of oyster bottoms is, therefore, in the eyes of the law, no application, and is no bar to an assignment of unoccupied ground. The mere fact that the plaintiff formerly rented the ground raises no equity in his favor. Coleman v. Claytor, 93 Va. 20, 24 S. E. Rep. 463.
One who shows no application to the inspector, or assignment of grounds by him, or notice, or receipt for rent paid, has no property in oyster grounds under the statute and cannot maintain the action of unlawful detainer for them against one who is not a mere wrongdoer but who is holding under a claim of right. West v. Adams (Va.), 27 S. E. Rep. 496.
An inspector, in the assignment of oyster grounds, acts in a quasi-judicial capacity, and cannot be compelled by mandamus either to exercise his discretion or to undo what he has already done in the exercise thereof. Thurston v. Hudgins, 93 Va. 780, 20 S. E. Rep. 966.
D. Mere Possession. — In Mears & Lewis v. Dexter, 86 Va. 834, 11 S. E. Rep. 538, the action of unlawful entry was brought. It was held, since the plaintiff was in actual possession of the oyster beds, when the defendant entered, and such entry was unlaw-tul, the plaintiff was entitled to recover, any possession being legal possession against a wrongdoer.
II.VIOLATION OF OYSTER LAWS.
A. Defective Indictments. — An indictment for taking oysters with ordinary oyster tongs, without paying the tax prescribed, charges no offence. The tax intended by the statute is a tax on sales of oysters so taken, and not for the taking. Const. Va. Art. 10, § 2; Morgan v. Com., 26 Gratt. 993. (1875.)
§ 2, Act March 14, 1872, forbids any other person than a resident of the state of Virginia to catch, take or plant oysters in the water thereof.
§ 22. Act April 1st, 1873, which was construed to deal with the whole subject of oysters omits the word “plant.” Held, this is equivalent to an express repeal of the former statute so far as concerns planting oysters, McCready v. Com., 27 Gratt. 982.
The acts of April 28, 1887, and March 5, 1888, prohibit dredging on private oyster grounds, and fix a penalty therefor. The Act of March 3, 1898, which amends and re-enacts these acts also prohibits such dredging but fixes no penalty. Held, since the latter act was intended to embrace the whole subject of oysters, the provision against such dredging was repealed by implication. Somers v. Com., 97 Va. 759, 33 S. E. Rep. 381.
B. Forfeitures. — There is no doubt that, where not restricted by the United States Constitution, a state legislature has the power to exact the forfeiture of a vessel employed in violating the oyster laws of the state, notwithstanding the owner may not be implicated in the offence, and the vessel may be so employed without his knowledge or consent. But such law, so far as it applies to third persons not charged with nor convicted of the offence denounced by the statute, must provide an opportunity for defence. The mere fact that in a particular case such third person was notified and had opportunity of defense is immaterial. The statute must provide such opportunity to be heard or it is void as to him. Boggs v. Com., 76 Va. 989.
The Act of March 6, 1880, which provides for the forfeiture of vessels employed contrary to the provisions of that Act, does not extend such forfeiture to the oysters unlawfully taken. Nor can the state retake such oysters as from a wrongdoer unless there be proof that the particular oysters were unlawfully taken. McCandlish v. Com., 76 Va. 1002.
III.OYSTER TAX.
In Com. v. Brown, 91 Va. 762, 21 S. E. Rep. 357. it was held that § 5. Acts 1892, providing for tax or weekly sales of oysters does not violate § 1, Art. 10, of the Const, or § 2, Art. 10. Also the title of an amendment to a section of the Va. Code need not be so detailed as that of the original act. A mere reference to the chapter and section to be amended, repealed, or added to, is sufficient if the amendment is germane to the subject of the chapter.
IV.THE COMPACT OF 1785.
The compact of 1785, between Virginia and Maryland is not in conflict with the second clause of the sixth article of confederation, and so far as it was in conflict with the constitution of the United States, it has been suspended and superseded. Such compact is not a treaty, alliance or confederation tending to weaken the central government, but a mere agreement to facilitate free commercial intercourse between two adjoining states. Wharton v. Wise, 153 U. S. 155, 14 Sup. Ct. Rep. 783.
Va. Code 1873, p. 110. provides “alllaws and regulations, which may be necessary for the preservation *564 of fish,”in the river Potomac or tbe river Pocomoke, within, the limits of Virginia, “shall he made with the mutual consent and approbation of both states” i.e., Maryland and Virginia. In Hendricks v. Com., 75 Va. 934, it was held that under this compact a citizen of Maryland could be convicted in a Virginia court for the violation of a Virginia statute in regard to fishing, passed with the consent and approval of Maryland. The court said: “The power of a state to enact laws, carries with it the judicial power to enforce them.”
An indictment in a Maryland court for unlawful fishing in the Potomac which does not aver that the statute violated was assented to by Virginia is defective. State v. Hoofman, 9 Md. 28.
In Ex parte Marsh, 57 Fed. Rep. 719, construing the compact of March 28, 1785, between Virginia and Maryland, the court in a very able opinion, held, disapproving the dictum to the contrary in Hendricks v. Com., 75 Va. 934, that the provision that “all laws and regulations which may be necessary for the preservation of fish shall be made with the mutual consent and approbation of both states” applies only to the Potomac river and not to thePocomoke river; and that provisions as to the Pocomoke river do not include the Pocomoke Sound, they being separate and distinct. The court seems, however, to have incorrectly stated the decision of the Virginia court in Hendricks v. Com., 95 Va. 934, saying that the Virginia court of appeals sustained the defense of defendant Hendricks.
The official report shows the verdict of conviction was affirmed. See Wharton v. Wise, 153 U. S. 155, 14 Sup. Ct. Rep. 783.