RUSSO et al. v. REED, Commissioner of Sea and Shore Fisheries of Maine.

Civ. A. No. 733.

United States District Court
D. Maine, S. D.

Oct. 23, 1950.

Nathan W. Thompson, Benjamin Thompson, Portland, Me., for plaintiffs.

Nunzi F. Napolitano, Assistant Attorney General of Maine, for defendant.

Before WOODBURY, Circuit Judge, and FORD and CLIFFORD, District Judges.

WOODBURY, Circuit Judge.

This is a suit by two citizens of the United States who are citizens of the Commonwealth of Massachusetts resident in Boston, for both a temporary and a permanent injunction restraining the Commissioner of Sea and Shore Fisheries of the State of Maine from enforcing against them the provisions of a Maine statute, the effect of which is to permit persons who have been legal residents of the state for three years to fish commercially[1] in Maine coastal waters during the summer months, but to prohibit non-residents from doing likewise. It is adequately alleged in the complaint in general terms that the matter in controversy between the parties exceeds the sum or value of $3,000, exclusive of interest and costs, and it is further alleged that the controversy is one arising under the Constitution of the United States; it being specifically alleged that the Maine statute referred to above violates the Privileges and Immunities clause of Article IV, Sec. 2, the Equal Protection clause of the 14th Amendment, and the Commerce clause. Article I, Sec. 8, clause 3.

With their complaint the plaintiffs filed an application for a temporary restraining order to prevent irreparable damage, and the district judge to whom both the application for injunctive relief and the application for a temporary restraining order were presented held a hearing on the latter application at which evidence was submitted. Upon that evidence he made specific findings of fact, including the specific finding that irreparable damage would result if the temporary restraining order was not granted, and in consequence granted the order. Subsequently the defendant moved for dissolution of that order, and after a hearing on that motion, at which further evidence was introduced, the district judge denied the motion.

This special district court was duly constituted in conformity with Title 28 U.S. C.A. § 2284, and after notice the case came on to be heard on the merits, at which time a motion by the defendant to dismiss for

1. Except for shellfish, lobsters and scallops, the taking of which are controlled by another statute with which we are not here concerned.

lack of jurisdiction was also heard. At the hearing before this court the parties introduced no evidence but their counsel stipulated certain facts in writing, and agreed to submit the case for final decree on the plaintiffs' application for a permanent injunction on that stipulation, and on the evidence introduced at the hearing on the application for a temporary restraining order and the hearing on the motion to dismiss that order.

The statutory provisions involved are sections 50 and 51 of the Maine "Sea and Shore Fisheries Laws". R.S.1944, c. 34, Laws of Maine 1949, pp. 19, 20. In 50 it is first provided that "No person shall take, catch or kill for commercial purposes any species of fish, except smelts by hook and line, in the coastal waters of the state until he has procured from the commissioner a written license therefor", and then the section goes on to provide for the issuance by the Commissioner for a fee of $3.00 of resident commercial fishing licenses to persons who have been legal residents of the state for 3 years prior to the date of their application "which license shall entitle the holder to take all species of fish, except clams, quahogs, mussels, lobsters and scallops by any lawful method, except the use of a weir, floating fish trap or seine." Section 51, with which we are more directly concerned, reads as follows:

"*Non-residents may procure commercial fishing license for limited period; fee; penalty.* No non-residents shall take, catch or kill at any time or in any manner in Maine coastal waters any species of fish for commercial purposes, except in accordance with the following provisions.

"A non-resident of the state may procure a commercial fishing license upon the payment of a fee of $10, which shall entitle the holder to take all species of fish, except shellfish, lobsters and scallops during the period of November 1 until March 31 of the following year, both days inclusive, by any lawful method except by use of a weir or seine.

"Whoever violates any provision of this section shall, upon conviction, be punished by a fine of not less than $500, nor more than $1,000, or by imprisonment for not less than 2 months, nor more than 6 months, or by both such fine and imprisonment."

The facts established are simple, and there is little, if any, dispute about them.

The plaintiffs, both elderly men of Italian extraction, have been commercial fishermen during their entire adult lives. Both are citizens of the United States by naturalization, and both are citizens of the Commonwealth of Massachusetts residing in Boston. The plaintiff, Scola, is the owner of two fishing boats, worth approximately $50,000, of the type known as draggers, one of which he commands himself; and the plaintiff, Russo is a fisherman on one of these boats. Both boats are well found and equipped, and their gear is particularly adapted for the taking of a free-swimming food fish known as whiting. These fish appear in numbers in the northeastern coastal waters of the United States in June, move northeastward up the coast from the vicinity of Provincetown, Massachusetts, during the summer, and disperse into deep water off shore in the early fall where they cannot be taken commercially. Captain Scola is a particularly skillful and successful whiting fisherman.

Late last June (1950) he brought his boats, apparently by prearrangement with the principal executive officer of the Mid-Central Fish Company of Maine, into Maine coastal waters and proceeded to fish therein for whiting which he sold to the fish company. On June 29, last, the plaintiffs, and some additional members of the crews of the Scola boats, others apparently were residents of Maine and had commercial fishing licenses, were arrested by Maine Coastal Wardens of the Department of Sea and Shore Fisheries acting under the direction of the defendant, Commissioner Reed, for fishing commercially in Maine coastal waters without state licenses. Subsequently, on July 10, Captain Scola and three other members of his crew were again arrested for fishing without licenses. In both instances those arrested were convicted in the Municipal Courts before which they were brought, and they appealed. So far as appears these appeals are still pend-

ing in the Maine Superior Court. At the time the arrests were made the wardens were acting under instructions of the defendant to arrest Captain Scola and those of his men who were unlicensed every time they were found fishing in Maine coastal waters.

■ It is evident from the testimony, although specific figures do not appear, that the value of the right to fish for whiting in Maine coastal waters during the summer season is worth, both to Captain Scola and to the individual members of his crews, substantially more than $3,000. Moreover, we think our subsequent discussion of the merits will demonstrate that at least one of the constitutional questions in controversy between the parties is far from frivolous or insubstantial. Therefore, although perhaps federal jurisdiction might have been grounded upon diversity of citizenship and amount in controversy, Title 28 U.S. C.A. § 1332(a) (1), it seems to us that such jurisdiction clearly rests upon an adequate amount in controversy and the existence of a genuine question of federal constitutional law. Title 28 U.S.C.A. § 1331. The jurisdiction of this district court of three judges under Title 28 U.S.C.A. § 2281 is also clear, for the present suit is for an injunction restraining the enforcement, operation or execution of a state statute by restraining the action of a state officer in the enforcement or execution of that statute on the ground that it violates the federal constitution.

■ Equitable jurisdiction in the premises on the ground of a threatened irreparable injury which is clear and imminent is obvious, for the loss of a season's fishing can not be restored, and the State of Maine provides no means for recovering damages in money to compensate for the loss occasioned by an illegal deprivation of the right to fish commercially within its coastal waters. Toomer v. Witsell, D.C., 73 F.Supp. 371, 374; Id., 334 U.S. 385, 391, 392, 68 S.Ct. 1156, 92 L.Ed. 1460. Nor do we see any occasion here for application of the doctrine of American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873, for the Maine statutory pro-

visions involved are clear and need no interpretation, and so far as we are aware no other special circumstance exists requiring the federal courts to stay action pending proceedings in the courts of the State.

Nevertheless the defendant in his motion to dismiss, which we heard with the merits, urges dismissal for lack of jurisdiction on two grounds. First he contends that the constitutional questions raised are not substantial, and "need no further argument", because, he says, the state enjoys the "absolute right to control and conserve its wildlife for the benefit of its own citizens", neither the Privileges and Immunities clause of Art. IV nor the Equal Protection clause of the 14th Amendment requiring it to accord equal treatment to residents and non-residents with respect to its fisheries; and, second, he contends that the plaintiffs have no standing in court to question the constitutionality of the Maine statute involved, for, never having applied for commercial fishing licenses, they have never been denied them, and hence have not been made the victims of the statute.

We have already said that the constitutional question presented is substantial, and referred to our subsequent discussion of the merits to demonstrate that proposition. Therefore the first ground advanced for the motion to dismiss, since it will be disposed of by our later discussion, does not call for consideration here.

■ The second ground advanced by the defendant in support of his motion to dismiss for lack of jurisdiction deserves only brief consideration. Perhaps it is enough merely to note that the non-resident fishermen plaintiffs in Toomer v. Witsell, supra, a case very much like the present which we will have occasion to discuss in more detail hereinafter, never, so far as appears, applied for non-resident licenses to fish for shrimp in the coastal waters of South Carolina, the statutes of which they claimed unconstitutionally discriminated against them, and neither the three-judge district court nor the Supreme Court of the United States in that case even mentioned the possiblity of any jurisdictional impediment

arising from their failure to do so. And the plaintiffs in that case might have had state licenses upon payment of the statutory fee. But however this may be, it certainly will suffice for us to say that the plaintiffs in the case at bar have shown a genuine financial stake, as distinguished from a mere academic interest, in the enforcement of the state statute here involved, and then to note that they are not complaining of some anticipated invalid or improper administrative action under a statute, valid upon its face, but are complaining of an attempt to enforce the penalties of a statute, which they say is invalid upon its face, in violation of their constitutional rights. This makes the language of Smith v. Cahoon, 283 U.S. 553, 562, 51 S.Ct. 582, 585, 75 L.Ed. 1264, in point, wherein, after stating with citation of cases that "the principle is well established that, when a statute, valid upon its face, requires the issue of a license or certificate as a condition precedent to carrying on a business or following a vocation, one who is within the terms of the statute, but has failed to make the required application, is not at liberty to complain because of his anticipation of improper or invalid action in administration", the Supreme Court at once goes on to say: "This principle, however, is not applicable where a statute is invalid upon its face and an attempt is made to enforce its penalties in violation of constitutional right." See also Lovell v. City of Griffin, 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 in which the Supreme Court said: "As the ordinance is void on its face, it was not necessary for appellant to seek a permit under it."

Moreover, it is obvious that the plaintiffs in the case at bar could not have obtained Maine licenses to do the kind of fishing for which they were equipped, even if they had applied, since they were not residents of the state. Thus to require each of them to make application for a license, which would certainly be denied, as a condition precedent to his right to challenge the state statute in court, would be to require the performance of a purely formal and meaningless act.

We turn now to the merits.

■ The defendant first argues that the Maine statute under consideration does not run afoul of the Privileges and Immunities clause of Art. IV, Sec. 2 of the Constitution of the United States [2] for the reason that the state statute involved is expressed in terms of "residence", whereas the constitutional limitation is expressed in terms of "citizenship". For refutation of this argument we need not look beyond the opinion of the Supreme Court in Toomer v. Witsell, 334 U.S. 385, 397, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460, in which, with citation of cases, the court in referring to plaintiffs in the same position as the plaintiffs in the case at bar, said: "Nor do they argue that since the statute is couched in terms of residence it is outside the scope of the privileges and immunities clause, which speaks of citizens. Such an argument, we agree, would be without force in this case."

The defendant's principal contention, as we have already indicated, is that the state, as the representative of its people in their sovereign capacity, owns all wildlife running at large within its borders, including the three-mile maritime belt, and that as such owner it has power, without limitation by either the Privileges and Immunities clause or the Equal Protection clause of the Federal Constitution, to control the taking thereof, even to the extent of restricting the right to hunt and fish to its own people to the complete exclusion of non-residents. In short, he says that the wildlife running at large in a state is the common property of its people, so that the right to take and use that wildlife is a property right, not a mere privilege of state citizenship, with the result that the people of a state by appropriate legislation may in the control of their common property lawfully restrict hunting and fishing to themselves alone to the exclusion of all others.

Undoubtedly several older decisions of the Supreme Court of the United States

---

2. "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

give support to the "ownership" theory upon which the defendant's argument rests. See Geer v. Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793, a case not in point on its facts but one in which the court expounded the theory at length. Only one of the earlier cases, however, seems to us to call for particular consideration here, and that is McCready v. Virginia, 94 U.S. 391, 24 L.Ed. 248, in which, by application of the principle that the state owns the wildlife within its borders, the Supreme Court held that Virginia might lawfully restrict the right to plant oysters in the tide waters of the Ware River to its own citizens to the complete exclusion of citizens of other states. Subsequently, however, in Missouri v. Holland, 252 U.S. 416, 434, 40 S.Ct. 382, 384, 64 L.Ed. 641, Mr. Justice Holmes speaking for a majority of the court cast some doubt upon the theory that the state "owns" its wildlife, for he said, having reference to migratory game birds, that "To put the claim of the State upon title is to lean upon a slender reed. Wild birds are not in the possession of anyone; and possession is the beginning of ownership." And very recently in Toomer v. Witsell, supra, a case closely in point to which we have already had occasion to refer, the Supreme Court, while it did not overrule McCready v. Virginia, supra, distinguished it upon grounds which make it distinguishable here.

In Toomer v. Witsell, the Supreme Court, with other matters, considered the validity under the Privileges and Immunities clause of Article IV, Section 2 of the Federal Constitution of a South Carolina statute which prohibited the taking of shrimp commercially in the coastal waters of the State without a license, and then provided for the issuance of shrimping licenses to residents for a fee of $25, and the issuance of similar licenses to non-residents for a fee of $2,500. In holding the above statute invalid under the Privileges and Immunities clause the court, after noting that the large and highly discriminatory fee had the practical effect of excluding non-residents from commercial shrimping in the coastal waters of South Carolina, distinguished the McCready case on two factual grounds. Its first ground of distinction was that in the McCready case the court was concerned with a state regulation of oysters, a "fish which would remain in Virginia until removed by man," whereas in the case before it the state statute under consideration dealt with a free-swimming fish which migrated through the waters of several states and were off the coast of South Carolina only temporarily. Its second ground was that the state statute considered in the McCready case constituted a regulation of fishing in the internal waters of the state, i. e., the tide waters of a river, whereas it was concerned in the case before it with a state statute regulating fishing "in the marginal sea." 334 U.S. at page 401, 68 S.Ct. at page 1165. Then the court went on to hold, 334 U.S. at page 403, 68 S.Ct. at page 1165, "that commercial shrimping in the marginal sea, like other common callings, is within the purview of the privileges and immunities clause."

■ Thus, whatever the situation may be with respect to the scope of state power to control the taking of wildlife for sport, or to control the taking of wildlife commercially anywhere within its borders except in the marginal sea, matters with which we are not concerned and as to which we express no opinion, it is now abundantly clear that the Privileges and Immunities clause of Art. IV, Sec. 2 of the Federal Constitution limits state power to control the commercial taking of free-swimming wildlife in the three-mile maritime belt.

■ It does not follow from this, however, that the several states are obliged to treat residents and non-residents with complete equality with respect to commercial fishing rights in their coastal waters. Although designed to weld the separate, independent sovereign states into a national unit, the Privileges and Immunities clause, like many other constitutional provisions, is not absolute in its command. "It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treat-

ment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. The inquiry must also, of course, be conducted with due regard for the principal that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures." Toomer v. Witsell, supra, 334 U.S. at page 396, 68 S.Ct. at page 1162.

▮ Application of this principle leaves no doubt in our minds that the Maine statute under consideration is invalid. It is not a conservation measure in that it limits the size of fish taken, the size of catch, or the season for fishing. Such effect as it may have upon conserving the supply of fish arises only from the fact that non-residents as a class are prohibited from fishing in the coastal waters of the state during the summer season, the only time when whiting can be taken in that area, and we were told by counsel for the plaintiffs at the hearing, and counsel for the defendant did not deny the statement, that the same is true with respect to other comparable fish, such as mackerel and herring, for instance, which either disperse during the winter or move off-shore beyond the three mile limit. Nor is there anything in the record to give the slightest indication that non-resident commercial fishermen constitute a local evil of some sort when pursuing their occupation in the maritime belt during the spring, summer and fall months. The sum and substance of the matter is that the effect of the state statute is to give residents of the state of three years standing a monopoly in the commercial taking of free-swimming fish, not only whiting but apparently other species as well, in the coastal waters of the state, to the complete exclusion of non-

resident commercial fishermen, and this for no other reason than the fact of their non-residence. Thus under the rule of Toomer v. Witsell the statute runs squarely afoul of the Privileges and Immunities clause of the Constitution of the United States.

▮ This being our view, it is unnecessary for us to consider the plaintiffs' argument on the Equal Protection clause of the Fourteenth Amendment, or their argument on the Commerce clause of Art. 1, Sec. 8. Neither do we consider the plaintiffs' argument that the statute is also invalid, first because it not only requires residence, but also residence for three years, in order to qualify for a resident commercial fishing license, and second, because other sections of the statute, which we need not quote, permit resident aliens to obtain licenses only if they own taxable real property in the town of their residence. The plaintiffs being United States citizens not resident in Maine have no standing to challenge the statute on either of these grounds.

Now, therefore, upon consideration of the pleadings and the evidence presented, and the arguments and briefs of counsel thereon, it is hereby ordered, adjudged and decreed that the defendant, Richard E. Reed, Commissioner of Sea and Shore Fisheries of the State of Maine, his officers, agents and servants and his and their successors, be, and the same hereby are, permanently enjoined and restrained from further prosecuting the plaintiffs under Section 51 of the Sea and Shore Fisheries Laws of the State of Maine for taking any species of fish for commercial purposes, except shellfish, lobsters or scallops, in the coastal waters of the State by any lawful means during the period from April 1 to the following October 31, both days inclusive. of the present or future years.