John BOZANICH, Andy Ness, Rudolph Plancich, Alan Takalo and William White, Plaintiffs,

v.

Augie REETZ, Commissioner of Fish and Game for the State of Alaska; Robert Moss, Chairman; and Mike Uttecht, Harry A. Shawback, Frank Cook, Don Harris, Don Smith, Glenn DeSpain, J. Ellsworth Jensen and Gordon Jensen, Members of the Board of Fish and Game for the State of Alaska, Defendants.

Civ. No. J–5–68.

United States District Court
D. Alaska.
Feb. 26, 1969.

Robert Boochever, of Faulkner, Banfield, Boochever & Doogan, Juneau, Alaska, Seth W. Morrison, of Allen, DeGarmo & Leedy, Seattle, Wash., for plaintiffs.

G. Ken Edwards, Atty. Gen. for State of Alaska, by Charles Cranston, Asst. Atty. Gen., Juneau, Alaska, for defendants.

Before ELY, Circuit Judge, and PLUMMER and VON DER HEYDT, District Judges.

## OPINION

ELY, Circuit Judge:

Plaintiffs are nonresidents of Alaska. The defendants are those authorities of the State of Alaska charged with the enforcement of Alaska regulations pertaining to fishing rights. The plain-

tiffs are experienced salmon fishermen, and each has pursued his occupation ·in certain, although not all, of the coastal waters of Alaska. Those waters are generally divided into twelve fishing regions. In 1968, Alaska adopted a certain statute under which fishing rights in the different regions were thereafter to be regulated by gear licensing requirements.[1] The word "gear," in its per-

1. We set forth here the pertinent statute, chapter 186, S.L.A. 1968.

AN ACT

Relating to persons eligible to obtain gear licenses; and providing for an effective date.

---

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF ALASKA:

\* Sec. 1. LEGISLATIVE FINDINGS. (a) The legislature finds that excessive entry into Alaska fishing areas has resulted in massive accumulations of salmon fishing gear with attendant ever-increasing difficulty in providing for sound conservation and management of the resource.

(b) The legislature further finds that the uninhibited issuance of gear licenses to anyone despite total lack of experience in the particular area has not only been the prime factor tending toward accumulation of excessive gear but also has posed additional management, enforcement, and public safety problems through the lack of familiarity with regulations, waters, and procedures peculiar to the individual area.

(c) In view of the findings in (a) and (b) of this section, it is considered necessary by the legislature to impose experience requirements before issuance of salmon gear licenses to applicants.

\* Sec. 2. AS 16.05 is amended by adding a new section to read:
Sec. 16.05.536. PERSONS ELIGIBLE FOR GEAR LICENSES. (a) Except in cases of extreme hardship as defined by the Board of Fish and Game, a salmon net gear license for a specific salmon registration area may be issued only to a person who

(1) has previously held a salmon net gear license for that specific salmon registration area; or

(2) has, for any three years, held a commercial fishing license and while so licensed actively engaged in commercial fishing in that specific area.

(b) An applicant who claims that he is qualified for a gear license under (a) (2) of this section shall submit to the Department of Revenue

(1) an affidavit by the applicant stating that he purchased Alaska commercial fishing licenses for the required three years, and during those years, commercially fished in the specific salmon registration area; the specific years the applicant purchased commercial fishing licenses shall be named in the affidavit; and

(2) either affidavits from two persons holding currently valid gear licenses in the area where the applicant desires to fish stating that the applicant has fished the required time in that area, or for each of three years statements prepared by the applicant, subsequent to the effective date of this section, signed by employees of the Department of Fish and Game evidencing that the applicant did report in at a Department of Fish and Game office within the required area during the required three years.

(c) A person who makes a false statement in the affidavits required by (b) (1) and (2) of this section is guilty of a misdemeanor.

\* Sec. 3. AS 16.05.540 is amended to read:

Sec. 16.05.540. LIMITATION ON ISSUANCE OF FISHING GEAR LICENSES. The fishing gear licenses mentioned in secs. 550–650 of this

tinent meaning here, refers to the operating nets employed in the commercial harvesting of salmon. The statute undertook to confer upon the Board of Fish and Game the right to adopt additional regulations pursuant to the statute. The most recent of the regulations, those which are pertinent here, became effective on February 12, 1969.[2] From an examination of the germane provisions of the statute, quoted in the margin, it is apparent that none of the plaintiffs could qualify for a salmon net gear license to fish in some of the twelve regions. In fact, their applications for the 1968 fishing season were denied under regulations less restrictive than those most recently issued.

The plaintiffs have argued that the licensing requirements are invalid as violative of both the Constitutions of the United States and the State of Alaska. There is no jurisdictional problem with the amount in controversy, and in light of the substantial federal question, our jurisdiction is initially founded on 28 U.S.C. § 1331(a). Since plaintiffs seek a declaration of the unconstitutionality of state laws and an injunction against their enforcement, our three-

chapter shall be issued one to the applicant and only for the area in which the applicant qualifies under sec. 536 of this chapter. Each applicant shall personally operate or assist in the operation of the licensed fishing gear. Each applicant for the fishing gear licenses mentioned in secs. 570 and 580 of this chapter shall also personally own or lease the licensed fishing gear. The license is transferable as provided under sec. 670 of this chapter.

\* Sec. 4. AS 16.05.250 is amended by adding a new subsection to read:

(12) establish additional qualifications relating to the eligibility requirements for gear licenses.

\* Sec. 5. This Act becomes effective on January 1, 1969, unless all or any part of sec. 102.09 of the 1968 Alaska Commercial Fishing Regulations is struck down by the courts, at which time this Act will become effective immediately.

Approved by governor: April 29, 1968

Actual effective date: January 1, 1969

———◆———

2. We quote here the relevant extract from the 1969 Commercial Fishing Regulations for the State of Alaska:

"Section 102.09 Salmon Net Gear Licenses.

(a) Persons eligible for salmon net gear licenses.

(1) Except in cases of extreme hardship as defined in Sec. 102.09(a) (2), a salmon net gear license for a specific salmon registration area may be issued only to a person who:

(A) has held in 1965 or subsequent years a salmon net gear license for that specific salmon registration area; or

(B) has, for any three years since January 1, 1960, held a commercial fishing license and while so licensed actively engaged in commercial fishing in that specific area.

(2) Exceptions for extreme hardship: Upon approval by a Hardship Panel consisting of the Commissioner, the Deputy Commissioner for Commercial Fisheries, and the Director of the Commercial Fisheries Division of the Department of Fish and Game, a salmon net gear license shall be issued as follows:

(A) Serious injury, sickness, or death; If the head of a household who held a 1968 Alaska salmon net gear license will be prevented from commercial fishing in 1969 because of serious injury, or sickness as certified by a physician, or death, a member of his family, or other individual selected by the family, shall be issued a 1969 salmon net gear license for the same registration area.

(B) Other cases of extreme hardship, including new fisheries, certain military service situations and prolonged illnesses as approved by the Hardship Panel.

A new fishery is a fishery that has developed in a new location where eligible fishermen are insufficient to adequately harvest the resource."

judge District Court was convened pursuant to 28 U.S.C. §§ 2281, 2284. On February 14, 1969, we conducted a hearing on the defendants' motion to dismiss and motion for summary judgment and the plaintiffs' motions for injunctive relief and for summary judgment. We took the cause under advisement, and our review of the authorities has convinced us that we must deny the defendants' motions and enter summary judgment in favor of the plaintiffs. Our reasons follow.

■ In their motion to dismiss, the defendants suggested that there is no case or controversy because the issues are moot. This contention is valid in its application to the plaintiffs' original complaint, which challenged the now-expired 1968 regulations under which they were denied licenses for that season. The plaintiffs' amended complaint, however, deals squarely with the 1969 regulations and statute now in effect and under which they would clearly be prevented from obtaining the gear licenses necessary for utilizing their salmon-catching equipment in certain coastal regions that they desire. Another three-judge court of this District overruled a similar suggestion of mootness and explained its reasoning at length in Brown v. Anderson, 202 F. Supp. 96 (D. Alas.1962).

■ The defendants also urge that we abstain from consideration of the issues in light of the questions of state law involved in the case. It is perfectly clear to us that the plaintiffs should not be penalized by our adopting the position that we should abstain from meeting the important constitutional issues presented until the Alaska state courts may at some future time be called upon to analyze the questions. Our abstention would surely deprive the plaintiffs of substantial engagement in their occupation during this year's forthcoming fishing season. This prospective injury to their economic livelihood looms too grave and irreparable to permit delay in the adjudication of their constitutional rights. Moreover, the legal issues presented do not constitute a proper case for application of the doctrine of abstention. The proper disposition of the case on the merits is too clear, and we have absolutely no doubt that, if the question had been presented to an Alaska court, it would have shared our conviction that the challenged gear licensing scheme is not supportable. See the analysis of authorities in Zwickler v. Koota, 389 U.S. 241, 250–251, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). In *Zwickler*, the Supreme Court stated, "We have frequently emphasized that abstention is not to be ordered unless the state statute is of an uncertain nature, and is obviously susceptible of a limiting construction." [Citations omitted.] 389 U.S. at 251, n. 14, 88 S.Ct. at 397.

■ As we interpret the licensing scheme, it violates the equal protection clause of the Fourteenth Amendment of the Constitution of the United States. The only persons that can presently qualify for net-gear licenses are those already vested with the local privilege. To receive a license for a particular fishery, one must have held a gear license in the same region in a year since 1965 or have held a commercial fishing license in that region for any three years since 1960.[3] An aspiring commercial licensee wishing to participate in salmon fishing may work for a locally licensed employer for three years or may fish for himself but without the necessary net-gear to catch salmon. Thus, if an outsider wishes to fish for salmon in a given year, and in three years to qualify

---

3. Commercial Fishing Regulations, section 102.09(a) (1) (A), (B) (1969), note 2, *supra*. No other entries into the salmon fishing industry in any coastal region are permitted except the narrowly prescribed class of extreme hardship cases as limited in section 102.09(a) (2) (1969), also quoted in note 2, *supra*. Under this "hardship" provision, a licensee would be empowered to assign his license to anyone, regardless of whether or not the assignee had any fishing experience whatsoever.

for his own gear license, his chances are wholly dependent upon obtaining employment under a member of that closed class of fishermen who, in the specified past years, possessed the right to fish in the area. Although a state may enact fishing regulations in the legitimate interests of conservation and safety, it may not, to achieve those ends, employ arbitrary and irrational means which create or protect local, monopolistic interests. Under the scheme, entry into the salmon fishing industry is controlled not by the state, but by local fishermen in each area who are eligible for gear licenses and can choose among the commercial fishermen, if any, that they might wish to hire. The power to permit competition cannot be vested in *private* interests whose own benefit would ordinarily not be served by assisting potential competitors to qualify.

We are convinced that the Alaska scheme cannot meet the equal protection requirements set forth in Morey v. Doud,[4] wherein the Supreme Court struck down another invidious classification in legislation concerning economic regulation. There, the Supreme Court announced:

"In determining the constitutionality of the Act's application * * * we start with the established proposition that the 'prohibition of the Equal Protection Clause goes no further than the invidious discrimination.' Williamson v. Lee Optical Co. of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563. The rules for testing a discrimination have been summarized as follows:

'1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification hav-

ing some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L. Ed. 369.

"To these rules we add the caution that 'Discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision.' " [Citations omitted.]

354 U.S. at 463–464, 77 S.Ct. at 1349, citing other controlling authorities; *see* Mayhue v. City of Plantation, 375 F.2d 447, 450–451 (5th Cir. 1967); *cf.* Levy v. Louisiana, 391 U.S. 68, 71, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). We can reasonably conceive of no hypothetical state of facts which would justify discrimination in favor of salmon fishers who happened to have held commercial licenses in three years since 1960 or gear licenses in a year since 1965. The defendants suggest that prior experience might be necessary in the interests of safety and conservation management; nevertheless, we perceive no rational basis for the state's placing of selection of the outsiders allowed to gain the necessary "prior experience" in the industry in the hands of private citizens now eligible for the required licenses. The defendants suggest that the necessary experience may be gained by an outsider if he fishes commercially in the area for three years, even though such fishing is not with the net-gear neces-

4. 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957).

sary to catch salmon. We cannot understand how the "experience" necessary to fish for salmon might be promoted by requiring the plaintiffs, who are experienced in salmon fishing, or others with no such experience to employ the different techniques incident to fishing for herring or other forms of non-salmon sea life.

■ Although we would have preferred that the Alaska courts should have had the first opportunity to so hold, we must also now declare that the licensing scheme violates the Alaska Constitution, which, in its Article VIII, provides:

"Section 3. *Common Use.* Wherever occurring in their natural state, fish, wildlife, and waters are reserved to the people for common use. * * *

"Section 15. *No Exclusive Right of Fishery.* No exclusive right or special privilege of fishery shall be created or authorized in the natural waters of the State."

The Attorney General of Alaska, in an Opinion directed to the Commissioner of the Department of Fish and Game, dated February 9, 1968, emphasized the unconstitutionality of a proposed and essentially similar licensing requirement which would have restricted area licenses to those license-holders within the same area in the past two years. The Attorney General relied on State ex rel. Bacich v. Huse, 187 Wash. 75, 59 P.2d 1101 (1936), in which 1933 salmon gear licenses were issued only to those who had held licenses in 1931 or 1932. He set forth the legislative history of section 15, *supra*, demonstrating that the provision was based on section 1 of the White Act of June 6, 1924, 43 Stat. 464, under which Alaska fisheries were regulated prior to Alaska's statehood. The leading case considering the White Act is Hynes v. Grimes Packing Co., 337 U.S. 86, 69 S.Ct. 968, 93 L.Ed. 1231 (1949). The Secretary of the Interior had ordered certain Alaska waters closed to fishing by all except those of the Karluk Indian Reservation and their licensees. The Supreme Court in *Hynes* held that the White Act prohibited fishing grants to special groups or numbers of people. We read, at 120–122, 69 S.Ct. at 987:

"Congress did not propose that these rich fishing grounds should be monopolized by this defined group. The legislative history of the White Act only emphasizes what the statute clearly says, that is, no special privileges in Alaskan fishing preserves.

* * *

"For the conservation of the fisheries, it was recognized that administrative flexibility must be permitted. * * * [W]e are of the opinion that licenses for fishing may be required in areas regulated under the White Act. We think, however, these licenses may be only regulatory in character * * *.

"We find nothing in the White Act that authorizes the Secretary of the Interior to grant reservation occupants the privilege of exclusive commercial fishing rights."

The Attorney General of Alaska also ruled that the Board of Fish and Game could not be given the delegated authority, in the absence of guiding standards prescribed by other provisions of law, to specify certain prior years as the test for whether salmon gear licenses would be issued. Here, the Board has set specific years in the 1960's, although no guidelines are included in the 1969 statutory scheme. In this connection, it is pertinent to note that the Attorney General's Opinion was explicitly made applicable to section 102.09, the forerunner of the section 102.09 regulations set out in footnote 2, *supra*.

The Alaska legislature apparently attempted to avoid the impact of Attorney General Boyko's Opinion by ostensibly providing an avenue by which a commercial licensee might, after three years with such an area license, obtain a salmon gear license in the particular area. The fact that he might do so, even though he could never, without the aid of an established net-gear licensee, have previously gained experience in the area with

gear essential to commercial salmon fishing does not harmonize with the defendants' argument that the challenged scheme is designed to promote safe operations by experienced fishermen. It appears to us that the "escape" avenue offers nothing beyond an illusory hope to non-established salmon fishermen seeking to ply their trade in a new area.

█ There is no saving difference between the present licensing scheme and that to which the Attorney General directed his objection. Both would tend to establish monopolistic trade guilds not thought desirable by the framers of Alaska's Constitution. As a properly constituted three-judge court, we have jurisdiction to consider all legal attacks upon the statute. Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80–81, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960). We therefore conclude that the 1969 salmon net-gear licensing statute and its consequent regulations cannot survive the requirements of the equal protection clause of the Constitution of the United States or those of the Constitution of Alaska.

██ In oral argument the defendants argued that summary judgment for the plaintiffs would be improper because the decision of the court might rest upon facts to be proved in plenary proceedings. Pressed for a definition of such anticipated proof, defendants' counsel was unable to specify, with any reasonable precision, any genuine issue of fact. Moreover, any genuine issue of fact, the resolution of which might control the disposition of the controversy, is required by Rule 5(H) (2) [5] of this court to be disclosed by written statement not later than three days prior to the hearing on a motion for summary judgment.

The defendants did not, within the time allowed by this rule, or ever, file the required statement. This corroborates our conclusion that no genuine disputed issue of fact remains. Counsel did orally suggest that the defendants might offer proof that overriding considerations of conservation inspired the adoption of this challenged regulatory scheme. Such proof, whatever it might be, could not alter the result. However worthy or desirable may have been the motives behind the legislation, they cannot cure the obvious constitutional infirmities.

Accordingly, we deny the defendants' motions to dismiss and for summary judgment. We grant the plaintiffs' motion for summary judgment. The enforcement of the 1969 statute and the regulations in question is permanently enjoined. Plaintiffs' counsel will prepare and submit a proposed form of judgment.[6]

---

5. This rule, as amended March 1, 1967, reads as follows:

"(2) Any party opposing the motion [for summary judgment] shall, not later than three (3) days prior to the hearing, serve and file a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated."

6. Findings of fact and conclusions of law are not required when a disposition is made, such as here, by summary judgment. Fed.R.Civ.P. 52(a). Our opinion recites the essential factual and legal considerations which bear upon the result to which we have been impelled.