Thomas MASSEY, Plaintiff,

v.

Spencer APOLLONIO, in his capacity as Commissioner of Department of Marine Resources for State of Maine, Defendant.

Civ. No. 74–7 SD.

United States District Court,
D. Maine, S. D.

Dec. 20, 1974.

Willard H. Myers, III, Pine Tree Legal Assistance, Inc., John W. Bernotavicz, Augusta, Me., for plaintiff.

John W. Benoit, Deputy Atty. Gen., Edward Lee Rogers, Asst. Atty. Gen., Augusta, Me., for defendant.

Before COFFIN, Chief Circuit Judge, and GIGNOUX and BOWNES, District Judges.

## OPINION

GIGNOUX, District Judge.

Plaintiff Thomas Massey, a resident of Camden, Maine, brings this action under the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983, against the Commissioner of the Department of Marine Resources for the State of Maine. Plaintiff seeks a declaratory judgment and injunctive relief.[1] Jurisdiction is properly invoked under 28 U.S.C. § 1343(3), and a three-judge district court has been convened as required by 28 U.S.C. § 2281. At issue is the constitutional validity of so much of 12 M.R.S.A. § 4404 as requires a resident of Maine to have remained physically present within the State for at least eight months of each year, for at least three years next prior to the date of his application, in order to be eligible for a lobster fishing license. We hold that the

---

1. Plaintiff has waived any claim for damages.

challenged portion of the statute violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, and accordingly that such part of the statute is void and may no longer be enforced.[2]

## I

12 M.R.S.A. § 4404 provides in relevant part as follows:

§ 4404. *Lobster and crab fishing*

It is unlawful for any person to fish for, take or catch any lobsters or crabs in any manner without having a current written license as provided in this section.

\*　　\*　　\*　　\*　　\*　　\*

4. *Residence requirements.* A person who has been a legal resident of the State, and who has remained physically present within the State for at least 8 months of each year, for at least 3 years next prior to the date of his application may apply to the commissioner for a lobster and crab fishing license.[3]

Plaintiff, formerly a resident of Pennsylvania, has been a resident of Camden, Maine since June 1, 1971. In July 1973, plaintiff applied for and was granted a lobster fishing license pursuant to 12 M.R.S.A. § 4404. At a hearing held on September 17, 1973, defendant determined that since plaintiff had been a legal resident of the State of Maine for only two years and three months, he would not be eligible to apply for and hold a license until June 1, 1974. Accordingly, plaintiff's lobster fishing license was revoked. Plaintiff reapplied for a license on June 2, 1974. Defendant denied plaintiff's second application because of a recently enacted lobster license moratorium law, which restricted the issuance of lobster fishing licenses until December 31, 1975 to persons who held licenses issued for the calendar year 1973 and for the year 1974 prior to May 15, 1974. P.L.1973, c. 784.[4]

## II

We emphasize that the constitutional issue which we treat is a narrow one. It is whether the three-year durational residence requirement of 12 M.R.S.A. § 4404 violates the Equal Protection Clause of the Fourteenth Amendment. It is not whether Maine may restrict lobster fishing privileges to bona fide Maine residents. For Maine does not dispute that plaintiff has been a bona fide resident of the State since July 1, 1971. Maine requires, however, that in addition to being a bona fide resident, an applicant for a lobster fishing license

2. In view of this conclusion, we do not reach the question of whether, as plaintiff asserts, the challenged statutory provision also violates the Privileges and Immunities Clause of Article IV, Section II of the Constitution. Nor, since it is stipulated that plaintiff is a bona fide legal resident of Maine, do we decide whether, as plaintiff also contends, the limitation of lobster fishing licenses to Maine residents impinges upon any constitutional right of nonresidents. *Compare* Toomer v. Witsell, 334 U.S. 385, 395–403, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948); Mullaney v. Anderson, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952); Russo v. Reed, 93 F. Supp. 554 (D.Me.1950), *with* McCready v. Virginia, 94 U.S. 391, 24 L.Ed. 248 (1876).

3. The phrase ", and who has remained physically present within the State for at least 8 months of each year," was inserted by a 1973 amendatory act. P.L.1973, c. 397, effective October 3, 1973.

4. P.L.1973, c. 784, was enacted as emergency legislation by a Special Session of the Maine Legislature and became effective April 1, 1974. It provided:

*Sec. 1. R.S., T. 12, § 4404, sub-§ 9, additional.* Section 4404 of Title 12 of the Revised Statutes, as amended by section 2 of chapter 67 of the public laws of 1967 and by chapter 397 of the public laws of 1973, is further amended by adding a new subsection 9 to read as follows:

9. *License freeze.* On and after May 15, 1974, lobster and crab fishing licenses shall be issued only to license holders of record with the Department of Marine Resources, which were issued for the calendar year ending December 31, 1973 and which were issued in 1974 prior to May 15, 1974.

*Sec. 2. Limitation.* This Act shall remain in effect until December 31, 1975.

must have been a resident for three years. It is this durational residence requirement that has barred plaintiff from the lobster fishery and which we here consider.

There is no dispute that the effect of the three-year durational residence requirement is to divide Maine residents into two classes. One class is comprised of residents who have resided in the State for more than three years; the other class consists of residents who have resided in the State for less than three years. On the basis of this sole difference, the first class is granted and the second class is denied the right to fish for lobsters on which their livelihood may depend. We agree with plaintiff that the Equal Protection Clause of the Fourteenth Amendment does not permit a State to discriminate in this way among its citizens.

In considering whether a law violates the Equal Protection Clause, the Supreme Court has developed two basic tests, depending upon the character of the classification in question and the individual interest affected by the classification. Dunn v. Blumstein, 405 U.S. 330, 335, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Under the traditional standard, equal protection is denied only if the classification is "without any reasonable basis." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911). Where, however, the challenged law directly impinges on the exercise of a "fundamental" personal right or creates a "suspect" classification, the State must show that the law is "necessary to promote a compelling governmental interest." Dunn v. Blumstein, *supra* 405 U.S. at 342, 92 S.Ct. at 1003; Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Kramer v. Union Free School District, 395 U.S. 621, 627, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). Since even under traditional equal protection

principles, we find that the classification of applicants for lobster fishing licenses according to whether they have lived in the State for three years is without rational basis and unconstitutional, we need not consider whether because the classification may impinge on the fundamental right of interstate travel, its constitutionality must be judged by the stricter requirement that it is necessary to promote a compelling state interest. *Compare* Dunn v. Blumstein, *supra,* and Shapiro v. Thompson, *supra, with* Shapiro v. Thompson, *supra* 394 U.S. at 638 n. 21, 89 S.Ct. 1322.

The traditional tests for determining whether a statute denies equal protection have been summarized by the Supreme Court in Rinaldi v. Yeager, 384 U.S. 305, 308–309, 86 S.Ct. 1497, 1499, 1500, 16 L.Ed.2d 577 (1966):

> The Equal Protection Clause requires more of a state law than non-discriminatory application within the class it establishes. McLaughlin v. Florida, 379 U.S. 184, 189–190, 85 S.Ct. 283, 286–287, 13 L.Ed.2d 222. It also imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons. "The Constitution does not require things which are different in fact . . . to be treated in law as though they were the same." Tigner v. Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124. Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made." Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620; Carrington v. Rash, 380 U.S. 89, 93, 85 S.Ct. 775, 778, 13 L.Ed.2d 675; Louisville Gas Co. v. Coleman, 277 U.S. 32, 37, 48 S.Ct. 423, 425, 72 L.Ed. 770; Royster Guano Co. v. Virginia,

253 U.S. 412, 415, 40 S.Ct. 560, 561–562, 64 L.Ed. 989.

*See also* Morey v. Doud, 354 U.S. 457, 463–464, 465, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). Under this standard, the Maine statute can survive scrutiny under the Equal Protection Clause only if the distinction which it draws between Maine residents who have lived in the State for three years and those who have not has some rational basis and is reasonably related to the promotion of a legitimate state legislative purpose.

Defendant principally seeks to justify the three-year durational residence requirement as a reasonable conservation measure designed to protect the lobster fishery. It is argued that the heavy influx of summer residents along the Maine coast, many of whom would, if permitted, engage in lobster fishing on a recreational basis, constitutes a unique threat to the lobster supply and to the commercial fishermen who are dependent on the fishery for their livelihood. The contention is that the effect of the waiting period requirement is to exclude from the fishery these summer residents, who have only a recreational interest in lobstering. Defendant therefore contends that the three-year residence requirement is a reasonable conservation measure which preserves the limited supply of lobsters available to the commercial lobster industry.

We do not question that Maine has a legitimate interest in conserving the available supply of lobsters for commercial lobster fishermen.[5] Nor do we doubt that the exclusion from the lobster fishery of persons who have not resided in Maine for three years diminishes the pressure on the lobster fishery and serves a proper conservation purpose. For present purposes, we may also accept that Maine may legitimately exclude summer residents and recreational fishermen from the lobster fishery. But to the extent that Maine seeks to justify the classification as an appropriate attempt to exclude from fishing summer residents and those who wish to fish solely for recreational purposes, the statute is not tailored to serve either objective. Rather, the excluded class is all-inclusive, denying the right to fish for lobsters not only to summer residents and recreational fishermen, but also to year-round residents, whether recreational or commercial fishermen, who have resided in the State for less than three years. The statute in effect creates a lobster fishing monopoly in favor of three-year residents. It precludes any person who has not resided in Maine for three years from demonstrating that he is more than a summer resident or that he is a serious commercial fisherman. The Equal Protection Clause prohibits such an arbitrary differentiation. Rinaldi v. Yeager, *supra* 384 U.S. at 310, 86 S.Ct. 1497; Carrington v. Rash, *supra* 380 U.S. at 96, 85 S.Ct. 775; Shapiro v. Thompson, *supra* 394 U.S. at 631, 89 S.Ct. 1322; *Cf.* Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); Bozanich v. Reetz, 297 F. Supp. 300 (D.Alas.1969), rev'd on other grounds, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970).

Apart from its conservation purposes, defendant advances two other justifications for the statute's three-year residence requirement, neither of which requires more than summary treatment. Defendant's first contention is that the three-year residence requirement is a conclusive means of determining bona fide residence. The Supreme Court, however, has consistently rejected as violative of the Equal Protection Clause similar attempts to justify a durational residence requirement as an administra-

---

5. Plaintiff does not dispute that the Maine lobster industry is facing an imminent crisis. The uncontroverted record discloses that in recent years a combination of increased fishing pressure and a decline in sea temperature have substantially depleted the supply of lobsters, and that unless fishing pressure is drastically diminished, the supply may, in the near future, be reduced to the point where it will be impossible to maintain reasonable yields.

tively effective method of determining whether recent arrivals in a state are bona fide residents. Dunn v. Blumstein, *supra* 405 U.S. at 345–354, 92 S.Ct. 995; Shapiro v. Thompson, *supra* 394 U.S. at 636, 89 S.Ct. 1322; Carrington v. Rash, *supra* 380 U.S. at 94–97, 85 S.Ct. 775. *But cf.* Vlandis v. Kline, 412 U.S. 441, 452, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). Defendant next suggests that the three-year waiting period ensures that recent arrivals in the State, who may be romantically attracted to the idea of lobster fishing, may be made aware of the rigorous life of a lobster fisherman and may acquire the skills of an experienced lobsterman. But the classification is insufficiently tailored to achieve this end. On the one hand, the statute excludes shorttime residents who may be experienced fishermen; on the other hand, the classification permits any longtime resident to fish regardless of his experience. *Cf.* Dunn v. Blumstein, *supra* 405 U.S. at 356–360, 92 S. Ct. 995; Shapiro v. Thompson, *supra* 394 U.S. at 631, 89 S.Ct. 1322. Furthermore, defendant has made no showing that the three-year waiting period is in any way useful in achieving this asserted goal. Indeed, it is difficult to understand how a person can achieve an awareness of the rigors of lobster fishing or acquire the knowledge and experience necessary to develop the skills of an experienced lobsterman when he is totally precluded from engaging in the fishery.

We recognize that Maine has a valid interest in preserving its lobster resource. It may legitimately attempt to do so by such nondiscriminatory measures as limiting the size of lobsters taken, the size of the catch, the season for fishing, the number of licenses or the number of traps.[6] But Maine may not accomplish such a purpose by invidious distinctions between classes of its citizens. In the present case, the legitimate state purpose of conserving the lobster supply cannot justify the invidious distinction between new and old residents created by the three-year durational residence requirement, the effect of which is to deny lobster fishing licenses to otherwise eligible applicants solely because they have recently moved into the State. No rational basis for so distinguishing between new and old residents has been shown.

Judgment will be entered for the plaintiff declaring that so much of 12 M.R.S.A. § 4404 as requires a resident of Maine to have remained physically present within the State for at least eight months of each year, for at least three years next prior to the date of his application, in order to be eligible for a lobster fishing license, violates the Equal Protection Clause of the Fourteenth Amendment and is void and unenforceable,[7] and enjoining the defendant from denying a lobster fishing license to the plaintiff.

**6.** Defendant testified that the State has as yet been unable to develop feasible methods for thus limiting the pressure on the lobster fishery. He conceded, however, that the principal obstacle to the enactment by the Legislature of effective conservation measures was political and industry opposition.

**7.** Plaintiff asks us to hold that if the statute's durational requirement is void, it cannot be severed from the residency require-

ment, which also must be struck down. Since this is a question of statutory interpretation and legislative intent, not necessary to the decision of this case, we deem it one which is best left for determination by the Maine courts in an appropriate case. Mayflower Farms v. Ten Eyck, 297 U.S. 266, 274, 56 S.Ct. 457, 80 L.Ed. 675 (1936); Dorchy v. Kansas, 264 U.S. 286, 289–291, 41 S.Ct. 323, 68 L.Ed. 686 (1924). *Cf.* Russo v. Reed, *supra* 93 F.Supp. at 561.