## McCready *v.* Virginia.

1. Subject to the paramount right of navigation, the regulation of which in rela-
tion to foreign and inter-state commerce has been granted to the United
States, each State owns the beds of all tide-waters within its jurisdiction, and
may appropriate them, to be used by its citizens as a common for taking and
cultivating fish, if navigation be not thereby obstructed.
2. The right which the citizens of the State thus acquire is a property right,
and not a mere privilege or immunity of citizenship.
3. The second section of the fourth article of the Constitution, which declares
that " the citizens of each State shall be entitled to all privileges and immu-
nities of citizens in the several States," does not vest the citizens of one State
with any interest in the common property of the citizens of another State.
4. A law of Virginia, by which only such persons as are not citizens of that
State are prohibited from planting oysters in the soil covered by her tide-
waters, is neither a regulation of commerce nor a violation of any privilege
or immunity of inter-state citizenship.

Error to the Supreme Court of Appeals of the State of
Virginia.

McCready, a citizen of Maryland, was indicted, convicted,
and fined $500, in the Circuit Court of Gloucester County, Va.,
for planting oysters in Ware River, a stream in which the tide

ebbs and flows, in violation of sect. 22 of the act of the assembly of Virginia approved April 18, 1874, c. 214, p. 243, Sess. Acts 1874.   That section is as follows : —

"If any person other than a citizen of this State shall take or catch oysters or any shell-fish in any manner, or plant oysters in the waters thereof, or in the rivers Potomac or Pocomoke, he shall forfeit $500, and the vessel, tackle, and appurtenances."

The Supreme Court of Appeals of the State affirmed the judgment below; whereupon the defendant sued out this writ of error.

*Mr. Robert Ould* for the plaintiff in error.

I. The legislation of Virginia is in violation of the second section of the fourth article of the Federal Constitution, which declares that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

1. Both at common law and under the statute, Virginia holds the beds of its navigable waters in trust for the common benefit of all its people or citizens.

2. Such beds being so held, the rights of the citizens of Virginia, which spring from citizenship, inure, by force of the Federal Constitution, to the benefit of the citizens of other States, even against a limitation in the State statute. Such limitation is void, because in derogation of Virginia's compact found in the supreme law. The Constitution, acting upon the grant in the State law in favor of the citizens of Virginia, and securing the same benefit to citizens of other States, nullifies the restriction in that law.

3. The State can fully and effectually regulate the use of its fisheries, and apply its police power to their management; but all such regulations must be in subordination to the Federal Constitution, and should apply to its own citizens as well as to those of other States.

4. The law as to shell-fish, so far as the right to use or appropriate them is concerned, is the same as that which applies to floating fish.

5. The right to plant oysters is distinct from the right to take or catch, and even if the constitutional provision does not

secure the latter, it does secure the former, to the citizens of other States, as no abstraction of any property held by the State is involved therein.

6. The State holds its different kinds of property in different rights. It has its private property, which it can control as fully as the private citizen can his. It also has its public property, which its citizens and those of other States can use and enjoy but not appropriate, such as its public buildings and grounds. It also holds a third class of property, such as its floating and embedded fish, as to which there can be no use or enjoyment except in appropriation; and when the right of user by appropriation is given by the State to its own citizens, the Federal Constitution secures the same right to the citizens of the other States.

7. The constitutional provision applies to tangible property as well as to incorporal privileges, where the right to use or appropriate tangible property held by the State is conferred upon all its citizens.

8. If the right of planting oysters, when it is given to the citizens of a State, is not secured to the citizens of other States, by the word "privilege" in the Federal Constitution, any punishment for planting them is excluded by the word "immunity."

The authorities for these positions are: *Paul* v. *Virginia,* 8 Wall. 180; *Ward* v. *Maryland,* 12 id. 418; *Slaughter-House Cases,* 16 id. 36; *Moody* v. *Arnold,* 1 Halst. 1; *Martin* v. *Waddell,* 16 Pet. 410; *Smith* v. *State of Maryland,* 18 How. 71; *Den* v. *Jersey County,* 15 id. 432; *Pollard's Lessee* v. *Hagan,* 3 id. 212; *Somerset* v. *Fogwell,* 5 Barn. & Cress. 883; *Bagot* v. *Orr,* 2 Bos. & Pull. 472; *Watson* v. *Sampson,* 8 Cush. 347; *Lakeman* v. *Burnham,* 7 Gray, 437; *Peck* v. *Lockwood,* 5 Day, 22; *Preble* v. *Brown,* 47 Me. 286; *Smith* v. *Levinus,* 8 N. Y. 472; *Home* v. *Richards,* 4 Cal. 441; 2 Black. Com. 39; *Chapman* v. *Miller,* 2 Speers, 783; *Wiley* v. *Parmer,* 14 Ala. 647; *Crandall* v. *State,* 10 Conn. 343; *Campbell* v. *Morris,* 3 Harr. & McH. 553, 554; *Commonwealth* v. *Milton,* 12 B. Mon. 219; Cooley's Story, sects. 1930, 1934, 1937.

II. The legislation is in conflict with the third clause of the eighth section of the first article of the Federal Constitution,

which confers on Congress the power " to regulate commerce with foreign nations and among the several States."

The law of Virginia applies as well to oysters brought from a sister State as to those bought in Virginia and planted there. As to such foreign oysters, at least, it is in conflict with existing commercial regulations, and also with the laws of the United States relating to the coast trade. Those laws give to all citizens of the United States the same rights of traffic and intercourse. A statute which prevents a citizen of Maryland from devoting property to such uses in Virginia as any Virginian can devote similar property to is a regulation of commerce, whether the property be brought from Maryland or purchased in Virginia. A citizen of Virginia can purchase a cargo of oysters in Maryland or in Virginia and plant them in the waters of Virginia. A citizen of Maryland, if he purchases a cargo of oysters in Maryland or in Virginia, cannot plant them in the waters of Virginia. Here is not only inequality, but an interference with the exclusive commercial authority of Congress. Cooley's Story on the Const., vol. ii. pp. 2–23 ; *Welton* v. *The State of Missouri*, 91 U. S. 275.

*Mr. R. T. Daniel*, Attorney-General of Virginia, *contra.*

Mr. Chief Justice Waite delivered the opinion of the court.

The precise question to be determined in this case is, whether the State of Virginia can prohibit the citizens of other States from planting oysters in Ware River, a stream in that State where the tide ebbs and flows, when its own citizens have that privilege.

The principle has long been settled in this court, that each State owns the beds of all tide-waters within its jurisdiction, unless they have been granted away. *Pollard's Lessee* v. *Hagan*, 3 How. 212; *Smith* v. *Maryland*, 18 How. 74; *Mumford* v. *Wardwell*, 6 Wall. 436 ; *Weber* v. *Harbor Commissioners*, 18 id. 66. In like manner, the States own the tide-waters themselves, and the fish in them, so far as they are capable of ownership while running. For this purpose the State represents its people, and the ownership is that of the people in their united sovereignty. *Martin* v. *Waddell*, 16 Pet. 410. The title thus

held is subject to the paramount right of navigation, the regulation of which, in respect to foreign and inter-state commerce, has been granted to the United States. There has been, however, no such grant of power over the fisheries. These remain under the exclusive control of the State, which has consequently the right, in its discretion, to appropriate its tide-waters and their beds to be used by its people as a common for taking and cultivating fish, so far as it may be done without obstructing navigation. Such an appropriation is in effect nothing more than a regulation of the use by the people of their common property. The right which the people of the State thus acquire comes not from their citizenship alone, but from their citizenship and property combined. It is, in fact, a property right, and not a mere privilege or immunity of citizenship.

By art. 4, sect. 2, of the Constitution, the citizens of each State are " entitled to all privileges and immunities of citizens in the several States." Mr. Justice Washington, in *Corfield* v. *Coryell*, 4 Wash. C. C. 380, thought that this provision extended only to such privileges and immunities as are " in their nature fundamental; which belong of right to the citizens of all free governments." And Mr. Justice Curtis, in *Scott* v. *Sandford*, 19 How. 580, described them as such " as belonged to general citizenship." But usually, when this provision of the Constitution has been under consideration, the courts have manifested the disposition, which this court did in *Conner* v. *Elliott*, 18 How. 593, not to attempt to define the words, but " rather to leave their meaning to be determined in each case upon a view of the particular rights asserted or denied therein." This clearly is the safer course to pursue, when, to use the language of Mr. Justice Curtis, in *Conner* v. *Elliott*, " we are dealing with so broad a provision, involving matters not only of great delicacy and importance, but which are of such a character that any merely abstract definition could scarcely be correct, and a failure to make it so would certainly produce mischief."

Following, then, this salutary rule, and looking only to the particular right which is here asserted, we think we may safely hold that the citizens of one State are not invested by this clause of the Constitution with any interest in the common property of the citizens of another State. If Virginia had by

law provided for the sale of its once vast public domain, and a division of the proceeds among its own people, no one, we venture to say, would contend that the citizens of other States had a constitutional right to the enjoyment of this privilege of Virginia citizenship. Neither if, instead of selling, the State had appropriated the same property to be used as a common by its people for the purposes of agriculture, could the citizens of other States avail themselves of such a privilege. And the reason is obvious : the right thus granted is not a privilege or immunity of general but of special citizenship. It does not " belong of right to the citizens of all free governments," but only to the citizens of Virginia, on account of the peculiar circumstances in which they are placed. They, and they alone, owned the property to be sold or used, and they alone had the power to dispose of it as they saw fit. They owned it, not by virtue of citizenship merely, but of citizenship and domicile united ; that is to say, by virtue of a citizenship confined to that particular locality.

The planting of oysters in the soil covered by water owned in common by the people of the State is not different in principle from that of planting corn upon dry land held in the same way. Both are for the purposes of cultivation and profit ; and if the State, in the regulation of its public domain, can grant to its own citizens the exclusive use of dry lands, we see no reason why it may not do the same thing in respect to such as are covered by water. And as all concede that a State may grant to one of its citizens the exclusive use of a part of the common property, the conclusion would seem to follow, that it might by appropriate legislation confine the use of the whole to its own people alone.

Neither do we think this case is at all affected by the clause of the Constitution which confers power on Congress to regulate commerce. Art. 1, sect. 8. There is here no question of transportation or exchange of commodities, but only of cultivation and production. Commerce has nothing to do with land while producing, but only with the product after it has become the subject of trade. Virginia, owning land under water adapted to the propagation and improvement of oysters, has seen fit to grant the exclusive use of it for that purpose to the citizens of

the State.   In this way the people of Virginia may be enabled to produce what the people of the other States cannot; but that is because they own property which the others do not.   Their productions do not spring from commerce, but commerce to some extent from them.

We are unable to agree with the counsel for the plaintiff in error in his argument, that the right of planting may be enforced as a privilege of inter-state citizenship, even though that of taking cannot.   Planting means, in " oysterman's phraseology," as counsel say, " depositing with the intent that the oysters shall remain until they are fattened."   The object is, therefore, to make use of the soil and the water above it for the improvement and growth of that which is planted.   It is this use, as has already been seen, that the State has the right, by reason of its ownership, to prohibit.          *Judgment affirmed.*