## LEONG MOW v. BOARD OF COM'RS FOR PROTECTION OF BIRDS, GAME, AND FISH et al.

(Circuit Court, E. D. Louisiana. February 14, 1911.)

No. 13,842.

1. TREATIES (§ 11*)—MOST FAVORED NATION CLAUSE—FISHERIES—"RIGHTS."

The most favored nation clause of the Chinese treaties providing that citizens of foreign nations shall have the same privileges and rights, and shall not be charged any higher imposts or duties than those paid by native citizens, does not include the right to take fish from the tide waters of a state.

[Ed. Note.—For other cases, see Treaties, Cent. Dig. § 11; Dec. Dig. § 11.*

For other definitions, see Words and Phrases, vol. 7, pp. 6220–6223; vol. 8, p. 7790.]

2. TREATIES (§ 11*)—REGULATION—RIGHT TO FISH—NATURE AND SCOPE.

The right to take fish from the tide waters of a state is a property right and not a mere privilege of citizenship, and, since the title to the bed of all tide waters in the state is in the state as trustee for its citizens, the state may impose such conditions on the right to take fish therefrom as it sees fit, notwithstanding the license fee exacted from aliens is higher than that required of its own citizens.

[Ed. Note.—For other cases, see Treaties, Cent. Dig. § 11; Dec. Dig. § 11.*]

In Equity. Suit by Leong Mow against the Board of Commissioners for the Protection of Birds, Game, and Fish, and others, to restrain the enforcement of Acts La. 1910, Nos. 132 and 245. Decree for complainant.

E. H. McCaleb, for complainant.

Amos L. Ponder, for Board of Commissioners and others.

FOSTER, District Judge. The bill in this case presents practically the same questions as the Matter of John Ashon v. Board of Commissioners, etc. (previously decided) 185 Fed. 221, with the exception that the plaintiff is a subject of the Emperor of China, and contends that Acts Nos. 245 and 132 of the Legislature of Louisiana, Session of 1910, discriminate against him, in violation of the treaties between China and the United States. He relies principally upon the most favored nation clause of the Chinese treaties, and refers to various treaties with European nations, all of which provide that citizens of foreign nations shall have the same privileges and rights and shall not be charged any higher imposts or duties than those paid by native citizens.

I do not find that the rights contemplated by the general terms of said treaties include the right to fish; in fact, the right of fishing has been usually the subject of special treaties. The state, as trustee for its citizens, owns the beds of all tide waters in its jurisdiction, the waters themselves, and the fish in them. The right to fish is a property right, and not a mere privilege of citizenship. McCready v. Virginia, 94 U. S. 395, 24 L. Ed. 248.

It is clear to my mind that the treaties relied on by plaintiff do not prevent the state of Louisiana from prohibiting a subject of the Em-

peror of China from fishing in the waters of the state at all. So it necessarily follows that, if permission is granted, the state can impose any condition it sees fit, notwithstanding the license fee exacted may be higher than that required of its own citizens.

The same reasoning, however, applies to this case as to the Ashon Case with regard to the threatened seizure of the plaintiff's seines. Therefore there will be a decree in favor of the complainant perpetuating the injunction prohibiting the board and its officers from summarily seizing or confiscating or destroying the seines and other paraphernalia named in the bill. In all other respects the injunction will be dissolved, costs of court to be paid by defendants.