## UNITED STATES v. BRAZORIA COUNTY DRAINAGE DIST. NO. 3.

(District Court, S. D. Texas, at Galveston. January 2, 1925.)

No. 30.

**1. States ⊂⇒4 — Conflicting claims between state and United States reconciled, if possible.**

Conflicting claims of sovereignty between a state and the United States will be reconciled by the court, if possible, without striking either down.

**2. Navigable waters ⊂⇒34—United States intent, impairing power of state in drainage matters, not implied.**

The state has a primary right in streams within its boundaries, and its power and that of its legally created subdivisions in drainage matters is not impaired by navigable character of streams, and no intention will be imputed to United States to invade this power, except where language of statute prevents any other construction.

**3. Navigable waters ⊂⇒34—State and county drainage districts not required to obtain approval of War Department.**

Under Barnes' Fed. Code 1919, §§ 9376, 9377, 9385 (Comp. St. §§ 9910, 9910a, 9918), relating to navigable waters, drainage district is not required to present its drainage plans to War Department for approval, nor can United States enjoin operation as nuisance because of failure to make such submission, though navigable waterway is somewhat obstructed by erosion and deposits caused by faulty construction.

In Equity. Suit by the United States against the Brazoria County Drainage District No. 3 to abate public nuisance in navigable waters. Injunction denied.

Harry Susman, Sp. Asst. Atty. Gen., for the United States.

Rucks & Enlow, of Angleton, Tex., for defendant.

HUTCHESON, District Judge. This is a suit filed by the United States, asking the abatement as a public nuisance of a fill made in Chocolate Bayou, a navigable stream, as the result of erosion and the deposit in same caused by a drainage ditch constructed by the district, the outlet of which into Chocolate Bayou was negligently and improperly constructed. On the facts there is practically no dispute. Chocolate Bayou is a navigable waterway. The drainage ditch was constructed without having first submitted plans to the War Department for approval. The operation of the ditch does cause a deposit and some filling in the stream, and to the extent of the fill some obstruction to navigation, and while some deposit of silt as attendant upon all drainage is inevitable, this ditch was so constructed as that a greater amount of washing and deposit occurred than was necessary.

The government concedes that there is no common law of the United States which prohibits obstructions and nuisances in navigable rivers, or which would sustain a bill in equity for abatement; that such obstructions and nuisances are offenses against the laws of states within which the navigable waters lie, but they are not offenses against United States laws, unless such laws are found on its statute books. Willamette Iron Bridge Co. v. Hatch, 125 U. S. 1, 8 S. Ct. 811, 31 L. Ed. 629; United States v. Rio Grande Irrigation Co., 174 U. S. 690, 19 S. Ct. 770, 43 L. Ed. 1136. It insists, however, that by appropriate statutes (Barnes' Federal Code 1919, §§ 9376, 9377, and 9385 (Comp. St. §§ 9910, 9910a, 9918) Congress has made express prohibition against such conditions and provided for an injunction against their continuance.

The defendant asserts that, since the title to and all rights in and over streams within the confines of the state belong to that state, subject only to the right of the central government to make reasonable provision for the protection of commerce and navigation (McCready v. Commonwealth of Va., 94 U. S. 391, 24 L. Ed. 248; Willamette Iron Bridge Co. v. Hatch, 125 U. S. 1, 8 S. Ct. 811, 31 L. Ed. 629; United States v. Rio Grande Irrigation Co., 174 U. S. 690, 19 S. Ct. 770, 43 L. Ed. 1136), it is not sufficient for the United States to point to statutes couched in general terms; but it must, when seeking to restrain a state or subdivision, put its finger on a definitive statute of precise application, and show that its prohibitions have been transgressed.

[1] It must be conceded that, where conflicting claims of sovereignty between the state and the United States are involved, as here, the effort of the court must be to reconcile the claims of both, if possible, without striking either down.

[2] Conceding the paramount right of the United States by appropriate legislation to prevent even states from interfering with commerce and navigation, it must also be equally conceded that the primary right in streams belongs to the state in which they lie, and that of the rights of the state in such streams none is more paramount than that of drainage. The power and obligation of drainage resides in and may be exercised by the state, or any of its legally created subdivisions, and the fact that a stream is navigable does not in any manner impair or defeat this right, and no intention will be imputed to the United States to invade this province of the state, except where the language of the statute relied upon prevents any other construction; for, while it must be conceded that, if the operation of drainage ditches unreasonably destroys or impairs navigation, the United States may make provision for the cooperative use of the streams, which, while not impairing the right of the state, will preserve the right to navigation, it by no means follows that the right to use navigable streams for drainage can be prevented because such use necessarily brings about some fill. Considering the statutes invoked in the light of these views, I think it plain that the contention of the government must be rejected.

[3] Section 9376 provides: "It shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, [or] condition * * * of any port, * * * haven, * * * or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers, and authorized by the Secretary of War prior to beginning the same." Section 9377 provides that the removal of any structure or parts of structures erected in violation of the provisions of said sections may be enforced by the injunction of any Circuit Court exercising jurisdiction in which such structures may exist.

That these statutes prohibit the erection of structures in navigable streams, unless the plans therefor have been approved by the War Department, and authorize the removal of such structures placed without such approval, is plain. That they do not apply to washing or erosion caused by drainage, and that the prohibitory features of the statutes cannot be distorted so as to cover the operations of drainage districts, is equally plain. If this is the correct construction of the statutes, it follows that there was no duty upon the Brazoria county drainage district to present its drainage plans to the War Department before they put them into operation, and that, such duty being absent, the government cannot enjoin the operation of the district for failure to make such submission.

The injunction prayed for will therefore be denied, at the cost of the United States.