ANDERSON v. STATE.

4503                                  213 S. W. 2d 615

Opinion delivered October 4, 1948.

*Orion E. Gates,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. Act 146, approved March 4, 1943, authorizes the Game and Fish Commission to issue commercial fishing license to any person who has resided in the State for a continuous period of six months. It permits use of a sein, trammel, or gill net. A further incident to the applicant's status is that in addition to residing in Arkansas for six months, he must have no other home. Sec. 13 (E).

H. H. Anderson and five other citizens of Louisiana procured nonresident fishing license under subdivision (B) of § 11, Act 146, paying the annual fee of $5.

Roy M. Adams, a resident citizen of Monticello, owned and operated a domestic fish market. He also owned a 400-yard sein, and for 1947 had paid the license imposed by § 13 (C).

Anderson and his associates were arrested by Game Warden Roy W. Hennigan, who took them before a justice of the peace to answer charges of engaging in commercial fishing without the requisite authority. When the arrests were made all but H. H. Anderson were using Adams' sein in Big Johnson Lake, Calhoun County. They had taken approximately 400 pounds of spoon-billed catfish and buffalo. Before the officer took his prisoners to the magistrate, Anderson appeared. His participation in the enterprise is established by affidavit filed in Circuit Court in the form of motion for a bill of particulars.

The arrests were made in September 1947. Following a favorable action on their motion for a continuance, the defendants were given until October 27th to prepare. At that time they were fined $50 each, and appealed.

In Circuit Court January 12, 1948, the defendants (who were not personally present) moved through their attorney to dismiss the appeals on the ground that the justice of the peace was without jurisdiction because no warrant of arrest had been issued. It was argued there, as here, that a game warden is not an officer within the meaning of our Code of Criminal Procedure authorizing arrests to be made by a peace officer in obedience to warrant, or without a warrant [in certain circumstances], or by a private person who has reasonable grounds to believe that a felony has been committed. Pope's Digest, §§ 3720-21; A. S. 43-403-4.

Appellants seemingly rely upon § 2 of Act 276 of 1919, where it was provided that wardens should investigate violations of the fish and game laws and report to an officer, " . . . but no such warden shall have power to make arrest or serve warrants unless deputized by the sheriff in the county in which the violation occurs." This provision, however, was superseded by Act 160 of 1927, Pope's Digest, §§ 5851-52. See the new Digest, A. S. 47-119 and 47-120, and Compiler's note at p. 579, v. 4. But, irrespective of the cited Acts, Amendment No. 35 to the Constitution, effective July 1, 1945, is conclusive. Section seven of the Amendment directs the Commission to elect certain personnel, including wardens. Section eight authorizes "all employed personnel" to make arrests for violation of the game and fish laws.

An information filed by the Prosecuting Attorney in Circuit Court is alleged to have been faulty in respect of offense dates. It is our view, however, that the defendants were properly in Court by virtue of their appeal from fines assessed by Magistrate G. W. Earnest, hence sufficiency of the information will not be considered.

Judge Gus W. Jones, who by consent sat without a jury, made express findings that cover five typewritten pages. The substance is that Adams, as owner of the net, was not operating it, but that he had permitted the six defendants to use it. Some of the fish were bought by Adams, the remainder having been sold elsewhere, some in Louisiana. It resulted, therefore, that the men,

being nonresidents who had not been in the State six months, did not come within the terms of § 13 (E) of Act 146, and the statutes do not contain other provisions conferring the right to engage in commercial fishing. The fact that each had procured the annual nonresident license mentioned in § 11 (B) was no protection.

Appellants' counsel lays stress upon two contentions: First, any law depriving nonresidents of rights given citizens of this State is discriminatory, hence it would violate the privileges and immunities guarantee expressed in the Fourteenth Amendment to the Federal Constitution, and Art. 2, § 8 of the State Constitution—due process. If, as we hold, the arrests and trials were authorized by law, due process was observed, and the objection must fail.

Appellants think the evidence shows they were employed by Adams on a wage basis, and they contend that the owner of a net who has complied with the legal prerequisites for commercial fishing may engage others to assist him, and it is immaterial whether such servants be residents or nonresidents if they have paid the fee required by § 11 (B). The trial court did not find with the defendants on a question of fact that might clearly distinguish the activities. Conversely, the Court's summation of the evidence was that, in respect of the net, it established the relationship of owner and borrowers, the latter, inferentially, owing some obligation to the owner in the way of remuneration. We agree that the testimony is susceptible of this construction. Warden Hennigan testified that the defendants told him—presumptively at the time of arrest—that they sold part of the catch in Monticello, and the balance in Louisiana. There is no evidence of an accounting to Adams, and he did not testify.

In passing sentence the Judge said that there might be some question regarding the Legislature's power to prohibit nonresidents from fishing in Arkansas, "and this is a matter that gives me more concern than anything in this lawsuit."

The exact question has often been before the United States Supreme Court, and decisions are that (a) subject to the paramount right of navigation, each State owns the bed of all waters within its jurisdiction and may appropriate them, to be used by its citizens as a common for taking and cultivating fish; (b) the right which the citizens of the State thus acquire is a property right, and not a mere privilege or immunity of citizenship; (c) a State law, by which only such persons as are *not* citizens are prohibited from engaging in fishing activities in waters under State jurisdiction, is neither a regulation of commerce nor a violation of any privilege or immunity of interstate citizenship. *McCready* v. *Virginia*, 94 U. S. 391, 24 L. Ed. 248.

Interesting opinions touching State ownership of game and fish were written by Mr. Justice HEMINGWAY in *Oregon* v. *State*, 56 Ark. 267, 19 S. W. 840. See, also, Judge McCULLOCH's opinion in *State* v. *Mallory*, 73 Ark. 236, 83 S. W. 955, 67 L. R. A. 773, 3 Ann. Cas. 852. Reference is there made to comprehensive opinion by Mr. Justice WHITE of the United States Supreme Court, (*Greer* v. *Connecticut*, 161 U. S. 519, 16 S. Ct. 600, 40 L. Ed. 793) where the Oregon case is cited. A different situation arises where the State, as proprietor in trust, discriminates between its own citizens in respect of privileges pertaining to wildlife. *Lewis* v. *State*, 110 Ark. 204, 161 S. W. 154. There are annotations in 61 A. L. R., beginning at p. 337, and in volume 112 of the same work, p. 63; also in 39 L. R. A., 581-91. In the *Greer* v. *Connecticut* case Mr. Justice WHITE quoted with approval from *Ex Parte Maier*, 103 Calif. 476, 37 Pac. 402, 42 Am. St. Rep. 129, where Judge VAN FLEET said for the Court: "The wild game within a State belongs to the people in their collective sovereign capacity. It is not the subject of private ownership except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or traffic and commerce in it, if it is deemed necessary for the preservation of the public good."

Affirmed.