Kathryn PIPER

v.

SUPREME COURT OF NEW HAMPSHIRE.

No. C82–135–L.

United States District Court, D. New Hampshire.

May 17, 1982.

H. Jon Meyer, Manchester, N. H., for plaintiff.

Martha V. Gordon, Asst. Atty. Gen., Concord, N. H., for defendant.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LOUGHLIN, District Judge.

The court has the following motions before it. Defendant's motion to dismiss, Supreme Court's motion to dismiss, plaintiff's motion for summary judgment and the plaintiff's motion for preliminary injunction which at the time of the hearing on May 6, 1982 is unfortunately moot. It has been agreed that the court can rule on one motion which is dispositive of all, that will be plaintiff's motion for summary judgment.

Plaintiff Kathryn A. Piper is a resident of Lower Waterford, Vermont, less than 400 yards from the New Hampshire border, and is admitted to practice before the State Bar of Vermont and the United States District Court for the District of Vermont. Upon application to the New Hampshire Board of Bar Examiners for permission to sit for the February, 1980 New Hampshire Bar Examination, the Board found her to be of good moral character and to possess suitable qualifications, and accordingly granted her permission. She took the February 27–28, 1980 Bar Examination and on April 18, 1980 was advised that she had received a passing score and would be recommended by the Board of Bar Examiners for admission to the New Hampshire Bar. At the time of taking the examination, she filed a good faith statement of intent to reside in New Hampshire. She was informed by the Board of Bar Examiners that she must establish a home residence in New Hampshire in order to be admitted to the bar. She filed a request for an exception to the residency requirement which was denied by the supreme court. She then filed a formal petition to the supreme court to grant her an exception which was also denied. In consequence of defendants' action, plaintiff has been unable to practice law in New Hampshire and now faces the threat that she will be required to retake the bar exam pursuant to Supreme Court Rule 42(8) requiring that applicants be admitted within two years of being notified of successful passage of the exam.

On July 25, 1979 plaintiff wrote to George Pappagianis, then Clerk of the New Hampshire Supreme Court, now a justice of the New Hampshire Superior Court. Part of the contents of the letter are as follows:

Due to the innumerable conflict of interest problems that would arise should I enter the private practice of law in the same town as my husband, I have decided that I would like to seek employment in New Hampshire upon termination of my clerkship with the Second Circuit this fall.

My main concern, of course, is satisfaction of the residency requirement. Moving to New Hampshire between now and February would present a considerable hardship for my husband and myself due to the tight mortgage market and due to the fact that we are expecting a child in the middle of March.

Succinctly, the issue in the case is whether the plaintiff who has successfully passed the New Hampshire Bar examination can be excluded from practicing in New Hampshire because she is a non-resident.

Rule 42 of the New Hampshire Supreme Court is entitled Admission to the Bar; Committee on Character and Fitness.

The court has culled from Rule 42 those sections which are apposite to the facts of this case.

42(3)

Any person domiciled in the United States and who either is a resident of the State of New Hampshire or filed a statement of intention to reside in the State of New Hampshire shall be eligible to apply for examination provided he is possessed of the qualifications hereinafter provided.

42(7)(a), (b)

Each person seeking to practice law in New Hampshire, who has taken and passed the bar examination is required to attend a practical skills course to be presented annually by the New Hampshire Bar Association. The course will assist new lawyers in developing basic lawyering skills and practical knowledge. Attendance is required and each new admittee will be required to execute an affidavit stating that he or she has attended each session of the course unless otherwise excused by the supreme court. A special committee of the New Hampshire Bar Association Continuing Legal Education Committee will administer the practical skills course but no test will be required. Each new admittee will be licensed to practice law subject to the condition that he or she completes the practical skills course within one year of the date of admission to the bar (unless in exceptional instances a longer period is approved in writing by the New Hampshire Supreme Court) or his or her license to practice shall be revoked.

(b) A new admittee's license to practice shall not be so revoked if, within one year after being admitted to the bar and before completing the practical skills course, he or she leaves New Hampshire intending later to return to practice in this state and promptly so notifies the Court in writing; provided however he or she returns to New Hampshire to practice law within three years of admission, notifies the Court immediately of his or her return and attends the first available practical skills course. Failure to comply with the foregoing conditions will result in automatic revocation of the license to practice. Readmission will require reexamination.

In plaintiff's motion for preliminary injunction, she raised the issue that under Rule 42 she would be required to retake and pass for the second time the New Hampshire Bar Examination if not admitted by April 18, 1982.

The court has for its edification various affidavits filed by the parties.

Ralph H. Wood, Clerk of the New Hampshire Supreme Court, filed an affidavit stating that in order for a successful applicant to be admitted to the New Hampshire Bar she or he must establish residency in New Hampshire. The applicant by written oath must state his or her New Hampshire address. When plaintiff signed the Petition and Questionnaire for Admission to the New Hampshire Bar she stated under oath that she intended to become a resident of Littleton, New Hampshire.

Chief Justice John W. King of the New Hampshire Supreme Court filed an affidavit stating.

As consistently interpreted by the New Hampshire Supreme Court, RSA Ch. 311 and Supreme Court Rule 42 require that an applicant for admission to the New Hampshire Bar be a *bona fide* resident of the State of New Hampshire at the time that the oath of office set forth in RSA 311:6 is administered. The oath of office includes the fact that the attorney will be an officer of the court *and* must support the Constitution of this State. RSA 311:6. Nonresidents could hardly be expected to carry out these solemn duties.

As interpreted by the New Hampshire Supreme Court, the residency requirement involves more than mere physical presence in the State of New Hampshire at the time of admission. "Residency," for purposes of admission to the Bar, contemplates that an applicant intends that the State of New Hampshire will be his or her "[p]rincipal place of physical presence for the indefinite future to the exclusion of all others." *Cf.* RSA 21:6

The requirement of actual residency at the time of admission to the New Hampshire Bar promotes the State of New Hampshire's interest in ensuring that attorneys admitted to practice will become, and remain, familiar with local rules and practices. Attorneys who have indicated, under oath, that they intend to reside in New Hampshire for the indefinite future are clearly more likely to become familiar with the laws and rules of the State of New Hampshire. That the State of New Hampshire demands such familiarity with local practice and procedure, above and beyond the knowledge of substantive law required for the bar examination, from attorneys admitted to the New Hampshire Bar is reflected in the New Hampshire Supreme Court's rule requiring all new admittees to complete a practical skills course within one year of admission. *See* Supreme Court Rule 42(7).

The residency requirement also ensures, to the extent possible, that attorneys admitted to practice in the State of New Hampshire maintain high standards of ethics, as well as competency, as residency within the State reinforces a practicing attorney's interest in his or her reputation as a lawyer in the legal community.

The residency requirement facilitates the State's interest in ensuring that all attorneys are readily available for court proceedings and easily subject to disciplinary action by the New Hampshire Supreme Court.

The residency requirement promotes the continued vitality of a competent, stable and well informed State Bar. The New Hampshire Bar is an integrated bar which depends heavily on the active participation of all of its members in its efforts to improve the quality and extent of legal services offered within the State of New Hampshire. In the absence of a residency requirement, the burden of providing those voluntary services currently provided by members of the New Hampshire Bar in such areas as participation in bar association committees; presentation of continuing legal education programs;

participation in significant *pro bono* cases on a volunteer basis; and participation in community programs designed to afford information to the public about the services offered by the New Hampshire Bar; would fall disproportionately on those members of the Bar who happen to reside within the State. Similarly, the burden of handling court-appointed cases, such as those required under the indigent defense program, would, as a practical matter, fall on resident members of the New Hampshire Bar.

Apart from the residency requirement itself, applicable to all applicants for admission, the New Hampshire Supreme Court imposes no other requirements upon residents of other states who seek admission to the New Hampshire Bar. The qualifications required for admission, and the fees imposed, are identical for resident and non-resident applicants.

George Bruno, editor of the 1982 New Hampshire Law Directory and Daybook filed an affidavit. Attached thereto was an alphabetical listing of the members of the New Hampshire Bar with the business addresses.

The plaintiff filed affidavits which are incorporated mainly in the undisputed facts.

Plaintiff's exhibit 1 is a list of out of state attorney's admitted to practice in New Hampshire.

All parties concur that a hurdle of awkward proportions is *Wilson v. Wilson*, 416 F.Supp. 984 (D.Or.1976), aff'd memo. 430 U.S. 925, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977). The basis, and thus the precedential value, of that opinion is open to some questions. The facts were analogous to those at bar. Mr. Wilson, admitted to practice in California, desired to practice in Oregon where he maintained a farm residence part of the year. The Oregon statute required applicants to be citizens of the state. The statute was interpreted to require a statement of intent to reside and actual residence at the time of admission. It was this first interpretation, failure to sign the statement of intent, that was the basis for

denial of Mr. Wilson's application that is relevant here.

The parties here have submitted as authority the opinions of District Judges in two other districts as to the binding effect of *Wilson v. Wilson, supra.* Defendants cite *Canfield v. Wisconsin Board of Attorneys Professional Competence,* 490 F.Supp. 1286 (W.D.Wis.1980), vacated for mootness, 645 F.2d 76 (7th Cir. 1981), for the proposition that *Wilson* is mandatory precedent. Plaintiffs cite *Stalland v. South Dakota Board of Bar Examiners,* 530 F.Supp. 155 (D.S.D. 1982), which distinguished both *Wilson* and *Canfield.* We turn to a closer examination of these cases.

The *Canfield* court was presented a case directly confronting the constitutionality of a residence requirement. Mr. Canfield stated on his application "I am not a resident of the State of Wisconsin nor do I plan to become a resident of the State of Wisconsin." When the Board of Professional Competency denied his application for failure to satisfy the residency requirement, Mr. Canfield filed suit alleging violations of the privileges and immunities clause of Article IV § 2, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. While acknowledging that the precise ruling of the *Oregon* district court in *Wilson* was the constitutionality of the requirement of the statement of intent, the *Canfield* court considered the summary affirmance of the Supreme Court to reach all of the issues presented in the jurisdictional statement.

> In the *Wilson* case, by its summary affirmance, the Supreme Court necessarily decided and rejected the specific challenges presented in the statement of jurisdiction, leaving undisturbed the judgment appealed from. Although I need not accept the reasoning of the three-judge court in *Wilson,* I must abide by the result reached by it and by the Supreme Court. *Mandel v. Bradley, supra,* 432 U.S. [173] at 176, 97 S.Ct. [2238] at 2240 [53 L.Ed.2d 199]. Therefore, in the present case in this court I must reject on its merits the federal constitutional challenge to the Wisconsin statute and rules.

490 F.Supp. 1290. The plaintiff-appellant's jurisdictional statement to the Supreme Court had phrased the question in terms of the constitutionality of the residency requirement. 490 F.Supp. 1289, 45 L.W. 3545. The *Canfield* court concluded that the Supreme Court's summary affirmance necessarily decided that the residency requirement passed constitutional muster.

The *Stalland* court distinguished the *Wilson* decision on two grounds. First, the court indicated that *Wilson* had been decided before the Supreme Court's decision in *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978). The court reasoned that *Hicklin's* reappraisal of the privileges and immunities clause minimized any impact of the *Wilson* case as precedent. Secondly, the *Stalland* court concluded that the Supreme Court had not reached the privileges and immunities clause challenge in their decision. The *Stalland* court wrote:

> Too often the Supreme Court has explained that the precedential effect of a summary affirmance is limited and can extend no farther than the precise issues presented and necessarily decided by those actions. *Mandel v. Bradley,* 432 U.S. 173, 176 [97 S.Ct. 2238, 2240, 53 L.Ed.2d 199] (1977). A summary disposition affirms only the judgment of the court below, *Fusari v. Steinberg,* 419 U.S. 379, 391–392, 95 S.Ct. 533, 540–541, 42 L.Ed.2d 633 (1975), and "no more may be read into [the court's] action than was essential to sustain that judgment. *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979). Since the district court in *Wilson* did not mention the privileges and immunities clause, the precise issue now before this Court was neither adequately presented to nor necessarily decided by the Supreme Court. Although the *Wilson* court considered an applicant's right to travel, that right is not based upon any particular constitutional provision. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). A decision based upon the right to travel, therefore, should not be deemed

determinative of issues narrowly raised under article IV, § 2.12.

At 161.

As the *Stalland* court indicated, the exact precedential effect of a summary disposition by the Supreme Court is open to some question. The doctrine has evolved diametrically since its earlier pronouncement in *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), through *Illinois Elections Board v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). The court indicated in *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977):

> Because a summary affirmance is an affirmance of the judgment only, the rationale of the affirmance may not be gleaned solely from the opinion below.
>> "When we summarily affirm, without opinion, ... we affirm the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument." (Footnote omitted.) *Fusari v. Steinberg*, 419 U.S. 379, 391–392 [95 S.Ct. 533, 541, 42 L.Ed.2d 521] (1976) (Burger, C. J., concurring).

> Summary affirmances and dismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions.

That the summary affirmance affirms the judgment of the lower court, and not its rationale, in relation to the federal issues raised below was reasserted in *Washington v. Yakima Indian Nation*, 439 U.S. 463, 477, 99 S.Ct. 740, 749, 58 L.Ed.2d 740 (1979).

> Our summary dismissals are, of course, to be taken as rulings on the merits, *Hicks v. Miranda*, 422 U.S. 332, 343–345 [95 S.Ct. 2281, 2288–2289, 45 L.Ed.2d 223], in the sense that they rejected the "specific challenges presented in the statement of jurisdiction" and left "undisturbed the judgment appealed from." *Mandel v. Bradley*, 432 U.S. 173, 176 [97 S.Ct. 2238, 2240, 53 L.Ed.2d 199]. They do not, however, have the same precedential value here as does an opinion of this Court after briefing and oral argument on the merits, *Edelman v. Jordan*, 415 U.S. 651, 670–671 [94 S.Ct. 1347, 1359, 39 L.Ed.2d 662]; *Richardson v. Ramirez*, 418 U.S. 24, 53 [94 S.Ct. 2655, 2670, 41 L.Ed.2d 551]. A summary dismissal of an appeal represents no more than a view that the judgment appealed from was correct as to those federal questions raised and necessary to the decision. It does not, as we have continued to stress, see, e.g. *Mandel v. Bradley, supra*, necessarily reflect our agreement with the opinion of the court whose judgment is appealed. It is not at all unusual for the Court to find it appropriate to give full consideration to a question that has been the subject of previous summary action. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 309 n.1 [96 S.Ct. 2562, 2565 n.1, 49 L.Ed.2d 520]; *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 [96 S.Ct. 2882, 49 L.Ed.2d 752],

The summary affirmance does not decide the issues presented by the appellant's jurisdictional statement; rather it decides whether the "specific challenges presented" are of such moment as to upset the lower court's judgment. As the 6th Circuit stated in *Anderson v. Celebrezze*, 664 F.2d 554, 558–559 (6th Cir. 1981):

> In light of the narrow effect to be given summary dispositions, appellant has construed the quoted sentence from Mandel too literally. The Supreme Court was not holding that a summary affirmance decides every issue raised in the jurisdictional statement, but that on the narrow facts before the Court the issues raised in the jurisdictional statement did not warrant the relief sought. To hold otherwise would permit parties appealing cases to

the Supreme Court to control the precedential effect of a summary action by the way they structure their jurisdictional statement.

Finally, the court notes that where there has been a doctrinal change since the summary affirmance, the affirmation is no longer mandatory precedent. *Hicks v. Miranda, supra,* 422 U.S. at 344–345, 95 S.Ct. at 2289; *Lecates v. Justice of Peace Court No. 4,* 637 F.2d 898, 902, 904 (3rd Cir. 1980). We turn to the federal questions and decision of the District Court and Jurisdictional Statement to the Supreme Court in *Wilson.*

The narrow and precise holding of *Wilson* is that the requirement of a statement of intent to reside does not violate Mr. Wilson's right to travel, the Equal Protection Clause, or the Due Process Clause. The *Wilson* court did not decide whether a state may constitutionally require residence, it assumed arguendo that the state could. The court wrote.

> With the case in its present posture, we emphasize that plaintiff does not, indeed cannot, challenge the requirement of O.R.S. § 9.220(1) that he be a citizen of Oregon at the time of admission to practice.

> •    •    •    •    •

> In this case, however, we are concerned only with the requirement that an applicant express an intent to be an Oregon resident at the time of admission.

416 F.Supp. at 987. The court limited its decision to the statement of intent because Mr. Wilson did not have standing to contest the residency requirement. His application had been denied for failing to sign the statement of intent. The issue, then was: assuming a valid rule, does requiring a statement of intent to comply with that rule violate the constitution? The *Wilson* court said no.

Although the court's rationale is not binding under the *Mandel* and *Yokima Indian Nation* decisions, it is pertinent here in that it reinforces the narrowness of the *Wilson* ruling. The district court based its decision on two grounds. First, it noted that the statement of intent requirement did not factually implicate the plaintiff's right to travel; he remained "free to live and travel wherever he [chose] prior to admission to the bar." 416 F.Supp. at 988. As there was no discrimination, there was no need to determine whether a "peculiar source of evil" justified a rule reasonably related to that evil. *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978). There was factually no violation of this privilege and immunities clause. The second reason asserted is that a state has a legitimate interest " . . . in processing only those bar applicants submitted by persons likely to meet admissions requirements." 416 F.Supp. at 988. An applicant who states he is not going to abide by the Supreme Court and Board of Governor rules need not be carried fruitlessly through the application process. His application may be denied at whatever stage it appears he is disqualified to be admitted. Minimizing the administrative and investigative workload is a legitimate state interest satisfying the equal protection and due process clauses. As the intention requirement violated neither the right to travel nor the 14th Amendment, the court awarded judgment in favor of defendants.

In contrast to this narrow holding below, Mr. Wilson on appeal phrased his jurisdictional statement very broadly to raise issues not addressed by the district court. He questioned the residency requirement at the time of admission and also the continued residency requirement which operated to disbar an attorney who moves away after being admitted. 45 L.W. 3545. The district court did not address the first question because of a lack of standing. More significantly, the second question was not raised below at all. If, as defendants contend, the summary affirmance is a judgment on the merits as to the first question, it necessarily follows that the Supreme Court reached the merits of the second also. The court rejects this construction of the Supreme Court's decision. The questions in the jurisdictional statement may not be considered in a vacuum; their true import is in relation to the decision and questions below. The signifi-

cance of the affirmance is that the appellant is not entitled to the relief sought based upon these challenges. *Mandel v. Bradley, supra; Anderson v. Celebrezze, supra.* As the holding of the court below on the residency requirement is that the plaintiff did not have standing, the Supreme Court's summary decision affirms only that holding. It does not reach the merits of the residency requirement. Accordingly, the court finds itself unhindered in the case at bar by the *Wilson* decision.

Whether or not *Hicklin v. Orbeck* has done away with the fundamental right analysis of *Baldwin v. Montana Fish and Game Comm'n,* 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978), as defendants suggest, the issue is a red herring. *Cf. Hawaii Boating Ass'n v. Water Transp. Facilities,* 651 F.2d 661, 667 (9th Cir. 1981). Whether it is anachronistic or not, this court aligns itself with those courts who have considered the practice of law a learned profession. Although there are other professions that provide charitable services, the law is the only one to recognize pro bono work as an obligation of the profession. Attorneys maintain a position unique among fiduciaries in that while zealously guarding their trust to their employer, they are never allowed to forget their obligations to the public and to the courts that hold them officers. An individual assuming the position of attorney not only takes up his trade, but assumes a posture in the administration of justice so vital that in criminal matters, the constitution mandates that society pay the cost when the client cannot. But whether or not the office of attorney is above trade or mere livelihood it is clearly within the ambit of the Privileges and Immunities Clause under the *Baldwin* analysis. 436 U.S. 378–383, 98 S.Ct. 1857–1860.

■ Of greater import here is whether the traditional deference afforded the states in governing the practice of law amounts to an exception to coverage of the constitutional provisions here invoked. Earlier decisions of the Supreme Court indicated one such exception where the discrimination involved the state ownership of natural resources. In *McCready v. Virginia,* 94 U.S. 391, 24 L.Ed. 248 (1876), the court upheld a Virginia statute that allowed residents to plant oysters in tidal waters of the Ware river, but not citizens of other states. The court took up this wildlife exception again in *Toomer v. Witzell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948), indicating some skepticism for the conceptualization of the *McCready* rule as an exception, and further indicating that if an exception, then it should not be expanded. The conceptualization was laid to rest in *Baldwin v. Montana Fish and Game Comm'n, supra* 436 U.S. at 385–387, 98 S.Ct. at 1861–1862, the court stating that the ownership interest is not absolute. *Hicklin* reaffirmed this, stating that the fact of ownership by the state "is a factor—although often the crucial factor—to be considered in evaluating whether the statute's discrimination against nonresidents violates the clause." 437 U.S. at 529, 98 S.Ct. at 2489. In an analogous vein, the Supreme Court has not considered the traditional deference to create an exception to the Due Process Clause of the Fourteenth Amendment, *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *Law Students Research Council v. Wadmond,* 401 U.S. 154, 162, 91 S.Ct. 720, 726, 27 L.Ed.2d 749 (1971); *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979), (Stevens, J. dissenting), nor the Equal Protection Clause of the Fourteenth Amendment, *In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973), nor the Speech Clause of the First Amendment, *Law Students Research Council v. Wadmond, supra; Baird v. State Bar of Arizona,* 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). The court concludes that it does not constitute an exception to the Privileges and Immunities Clause either, but rather is a factor to be considered in evaluating whether the rule violates the clause.

■ Both parties concur that the standard for review of an Article IV, § 2 challenge is to be found in the Supreme Court's most recent application of the Privilege and

Immunities Clause in *Hicklin v. Orbeck*, *supra*. That case involved an attack upon the constitutionality of an Alaskan statute giving residential preference in oil and gas pipeline employment. The court found support for appellant's position in *Ward v. Maryland*, 12 Wall 418, 20 L.Ed. 449 (1871), (licensing of non-resident merchants), and *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948), (non-resident shrimping license 100 times that of resident). The court cited *Toomer* and *Mullaney v. Anderson*, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952), to require a two-step analytical framework. The first enquiry is whether there is a substantial reason for the discrimination beyond residence. This is also stated as a requirement of a showing that the non-residents "constitute a peculiar source of the evil" the state seeks to address. 437 U.S. at 525–526, 98 S.Ct. at 2487. The second enquiry is whether there is a reasonable relationship between the means chosen and the end desired. The relationship must be "substantial", ibid. at 527, 98 S.Ct. at 2488, and the means selected "closely tailored" to meet the purpose. Ibid. at 528, 98 S.Ct. at 2488. We turn to an application of this standard to the defendant's justifications.

Defendant's brief advances three "evils" that it would remedy by the discrimination. Defendants contend that

> The "peculiar evil" at which Supreme Court Rule 42 is addressed is that non-residents of the State of New Hampshire, who wish to become members of the bar, will not be sufficiently committed to practicing law in the State of New Hampshire in order to (1) learn local practices and rules; (2) be conscious of developing a good reputation in a relatively small legal community; (3) be available for court proceedings and similarly, subject to disciplinary action by the court.

Defendant's memorandum at 8, 9. All of these reasons fall within constitutionally permissible concerns of "good moral character or proficiency in [the] law". *Schware v. Board of Bar Examiners, supra*, 353 U.S. at 239, 77 S.Ct. at 756. But that is insufficient

to satisfy the first leg of the *Hicklin* standard; the fact of non-residence must be the "peculiar source" of ignorance of local practices, disregard for reputation, and unavailability for court. The *Hicklin* court explained that the evil sought to be remedied there was a uniquely high level of unemployment. As the unemployment was due to lack of education and training among the large Eskimo and Indian populations and not the influx of non-residents, the non-residents were not the peculiar source of the unemployment. 437 U.S. at 526, 98 S.Ct. at 2487. The analogy to the instant action is compelling. If, as defendants contend, "practicing law within this state is the best method of ensuring familiarity with local rules and practice", then it is not non-resident applicants, but all applicants, that are the peculiar source of ignorance of the rules. Defendants contend that the residency requirement applies to all applicants and therefore does not run afoul of the privileges and immunities clause. This simplistic argument ignores the impact of the rule; although the residency requirement facially applies to all applicants, the discrimination it works only effects non-resident applicants. *See, Gordon v. Committee on Character and Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 644–645, 397 N.E.2d 1309, 1312–1313 (1979). Similarly, regard for the good reputation of the attorney and the bar generally is a function of where an individual's heart is, not where her house is. Availability for court proceedings depends on geographical distance, not jurisdictional boundaries. There are very few states whose configurations are such that all residents of the state are closer to the state courts than are all non-residents. New Hampshire is a good example of the opposite; there are areas of the contiguous states closer to the New Hampshire Supreme Court's situs in Concord as the crow flies than is the northern third of the state. Plaintiff here is as available to the state courts as any of the 269 non-resident members of the New Hampshire Bar Association. Finally, it cannot be seriously contended that the state boundary poses a sig-

nificant obstacle to disciplining an out-of-state attorney for her in-state actions. *See, Roy v. Transairco,* 112 N.H. 171, 173, 291 A.2d 605 (1972), (New Hampshire Long Arm Statute extends to limits of Due Process Clause.) In brief, the fact of plaintiff's non-residence is not the source of any of the evils defendants indicate their rule would remedy. Defendants have failed to satisfy the first requirement of the *Hicklin v. Orbeck* analytical framework.

Although the above ruling is dispositive, we proceed with the second *Hicklin* inquiry because it supports a decision that Rule 42(3) violates the Privileges and Immunities Clause. In *Hicklin,* the Supreme Court indicated that the Alaska Hire statute did not bear a substantial relationship to alleviating unemployment because it favored those individuals who would never qualify and those individuals already qualified as well as the individuals it sought to favor—those unemployed individuals becoming qualified. The Alaska Hire statute failed to satisfy the second stage of the inquiry because it was not closely tailored to promoting the employment of those individuals who sought but had not yet obtained pipeline employment.

Assuming arguendo that non-resident applicants are the peculiar source of ignorance of local rules and practice, the fit of the means adapted is particularly ill-suited. The defendants argue that the residency requirement is a commitment by the applicant that he or she will be a resident at the time of admission. Residents at the time of admission are more apt to remain residents after admission. Residents after admission are more apt to practice law in the state. Those practicing law in New Hampshire will become familiar with New Hampshire local rules and practice. This rather atten-uated logical equation falls prey to the same infirmity as the Alaska Hire statute; it favors resident admittees who do not intend to practice law, or who move from New Hampshire prior to practicing law, at the expense of non-resident admittees who would actively practice law in New Hampshire. Thus the bar of non-resident applicants is not closely tailored to achieving familiarity with local rules and practices. There are other, less intrusive means to meet this end, such as testing local rules on the bar examination, requiring admittees to attend a practical skills course, or a program of linking long-time members of the bar with new admittees, all of which New Hampshire has implemented. These programs are exemplary; as defendants point out, they establish a higher standard to be met by applicants to the New Hampshire Bar. But the outer limits of this higher standard and additional qualifications is the Constitution. We quote from *Golden v. State Board of Bar Examiners,* 452 F.Supp. 1082, 1087 (D.Md.1978), a case decided three months prior to *Hicklin v. Orbeck*[1] that upheld a residency requirement:

> The "local custom" theory and the "roots in the community" theory are unpersuasive. Indeed, the majority opinion does not rest its decision on either of these theories. Moreover, all of the cases dealing with residency requirements for admission to the bar have considered these theories and uniformly found them to be without merit. *Keenan v. Board of Law Examiners,* D.C., 317 F.Supp. 1350, 1359–1361 (1970); *Webster v. Wofford,* D.C. 321 F.Supp. 1259, 1261–1262 (1970); *Lipman v. Van Zant,* D.C., 329 F.Supp. 391, 400–401 (1971); *Potts v. Honorable Justices of Supreme Court of Hawaii,* D.C., 332 F.Supp. 1392, 1397–1398 (1971).

*Albright,* 427 F.Supp. 840, 845 (S.D.N.Y.1977), vacated and remanded for further consideration in light of *Hicklin v. Orbeck,* 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144 (1978). The District Court there relied upon an exhaustive discussion of the *Toomer* decision. If the Supreme Court did not view *Hicklin* as a departure from *Toomer,* this court is candidly at a loss to explain *Heimann.*

---

1. Defendants have cited numerous cases decided prior to *Hicklin v. Orbeck* upholding bar residency requirements as persuasive precedent here. Plaintiff contends that those cases are no longer persuasive because of the change of the law in *Hicklin.* Defendants in turn argue that *Hicklin* is not a change of the law, but a mere restatement, and therefore still persuasive. The answer to this dialogue may be found in *Consumers Union of U. S., Inc. v.*

Barring non-residents is also an overbroad means of assuring that attorneys are available for court or amenable to disciplinary proceedings. The New Hampshire courts, both state and federal, have rules pertaining to the appearance of counsel pro hac vice. Both bar non-resident counsel unless a member of the New Hampshire bar has appeared and is present in court.

*New Hampshire Superior Court Rule 19.* An attorney, who is not a member of the Bar of this State, shall not be allowed to engage in the trial or hearing in any case, except on motion which will not ordinarily be granted unless a member of the Bar of this State is associated with him and present at the trial or hearing.

*United States District Court of New Hampshire Rule 5(b).* Any attorney who is a member in good standing of the bar of any court of the United States or of the Highest court of any state may at the discretion of the court, on motion by a member of the bar of this court who is actively associated with him in a particular action, be permitted to practice before this court in that action. The court may at any time for good cause revoke such permission without hearing. An attorney so permitted to practice before this court in a particular action shall at all times have associated with him in such action a member of the bar of this court, upon whom all process, notices and other papers may be served and who shall sign all papers filed with the court and whose attendance shall be required at all proceedings unless excused by the court.

These rules have been efficacious in ensuring the required decorum in both courts and have sometimes not been strictly adhered to where visiting counsel have demonstrated by past performance his or her integrity and willingness to abide by the rules of New Hampshire trial practice. There are members of the New Hampshire bar who practiced in New Hampshire and who subsequently have moved to Massachusetts yet regularly appear in New Hampshire court without the requirement of local counsel. There also are members of the Massachusetts Bar who are not members of the New Hampshire Bar but who appear frequently in state and federal court and comport themselves in court with professional dignity. Unfortunately, there are certain members of the Maine and Massachusetts Bar who conduct themselves in an untoward manner as far as professional conduct is concerned. Having served sixteen years as a New Hampshire Superior Court Judge and more than three years as a federal judge, this court states from experience there was little that could be done about this conduct except in the immediate case before the court that they were involved in. They would appear in another of the state's counties and as New Hampshire Superior Court Judges are on circuit, wait until the judge changed circuits and reappear. In short, a review of those non-resident attorneys appearing in New Hampshire Courts, either as members of the bar or pro hac vice, indicates that residence is not substantially related to in-court conduct or availability. There are methods more closely tailored to this evil from which to choose. *See, Stalland v. South Dakota Board of Bar Examiners,* at 161–162; *Gordon v. Committee on Character and Fitness, supra,* 48 N.Y.2d 266, 422 N.Y.S.2d 646, 397 N.E.2d 1314 (1979).

The plaintiff in this case lives in the contiguous State of Vermont, is a member of the Vermont Bar, lives less than a quarter mile from the Vermont-New Hampshire border and may readily, if necessary, be subject to discipline if she were to violate any New Hampshire rules. She is similarly available for pro bono cases.

The court is not intimating that the plaintiff is a trouble maker, to the contrary her credentials are impeccable. The point is that she would be directly responsible for her actions as a member of the bar.

■ Having found that non-resident applicants are not the peculiar source of the evils the defendants indicate they are seeking to address, and having further found that the means selected do not bear a substantial relationship to the evils defendants have shown in justification, the court con-

cludes that the residency requirement fails to comply with Article 4, § 2, cl. 1. The enquiry need go no further. Defendants are enjoined from enforcing the residency requirement of N.H.S.Ct.R. 42(3). No costs. Plaintiff's request for attorneys fees is denied.

SO ORDERED.